**IN THE UNITED STATES DISTRICTCOURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **ASHLEY G. AND RICHARD G.** | § | |
| **AS PARENTS/GUARDIANS/NEXT** | § | |
| **FRIENDS OF M. G., A** | § | |
| **MINOR INDIVIDUAL WITH A** | § | |
| **DISABILITY** | § | |
| *Plaintiffs*, | § | **CIVIL ACTION NO. 19-420** |
| | § | |
| **V.** | § | |
| | § | |
| **COPPERAS COVE INDEPENDENT** | § | |
| **SCHOOL DISTRICT,** | § | |
| **AMANDA CRAWLEY, in her** | § | |
| **individual capacity,** | § | |
| **ROBERT TURNER, in his** | § | |
| **individual capacity, AND** | § | |
| **REBEKAH SHUCK, in her** | § | |
| **individual capacity,** | § | |
| *Defendants*. | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

Comes now, Ashley G. and Richard G., as parents /guardians/next friends of M.G., (hereinafter, "Plaintiffs" or "Parents"), a minor individual with a disability, (hereinafter, "Plaintiff M.G." or "M.G."), collectively termed Plaintiffs herein, and file this Complaint against Copperas Cove Independent School District (hereinafter, "CCISD"), Amanda Crawley, individually and as an agent of CCISD, Robert Turner, individually and as an agent of CCISD, and Rebekah Schuck, individually and as an agent of CCISD, pleading in the hypothetical and alternative, hereby state as follows:

## I.    JURISDICTION AND VENUE

1.      Jurisdiction is claimed under the Individuals with Disabilities Education Act, 20 U.S.C. §§1400-1482, as Parents and M.G. are aggrieved by the findings and Decision of the Special Education Hearing Officer ("SEHO") in a special education due process hearing

1

*Ashley G. et al v. Copperas Cove Indep. Schl. Dist.*

conducted pursuant to the IDEA, 20 U.S.C. § 1400 *et seq.,* the Americans with Disabilities Act, 42 U.S.C. §§12101 et seq., and Section 504 of the Rehabilitation Act of 1973 ("Section 504"). It is further claimed under 42 U.S.C. §1983 and the Fourth Amendment of the U.S. Constitution, as incorporated to the states through the Fourteenth Amendment to the United States Constitution pursuant to 28 U.S.C. §§1331, 1343. This Court has subject-matter jurisdiction over the Texas state law claims pursuant to 28 U.S.C. § 1367.

2.       Venue is predicated upon 28 U.S.C. § 1391(b)(1) based upon the residence of the Plaintiffs and Defendants, and upon 28 U.S.C. § 1391(b)(2) based upon the location of the subject matter of this action.

## II.       THE PARTIES

3.       Plaintiffs, at all times relevant to this suit, have resided within the city of Copperas Cove, Coryell County, Texas.

4.       Plaintiffs Ashley G. and Richard G. are the parents of M.G. as defined by IDEA, 20 U.S.C. § 1401(23).

5.       M.G. is a minor individual with a disability as defined by IDEA, 20 U.S.C. § 1401(3)(A) and a qualified handicapped person as defined by Section 504 of the Rehabilitation Act of 1973. 34 C.F.R. § 104.3 (l). M.G. is 14 years old and has recently completed eighth grade at Oak Creek Academy in Killeen, Texas. M.G. has been diagnosed with autism spectrum disorder, attention deficit hyperactivity disorder ("ADHD"), specific learning disability, dysthymia, and oppositional defiance disorder ("ODD").

6.       At the time of the events underlying these causes of action, M.G.  was identified as a student with a disability entrusted to the care of Defendant Copperas Cove Independent School District ("CCISD") and the other named Defendants at Copperas Cove Junior High School ("CCJHS").

*Ashley G. et al v. Copperas Cove Indep. Schl. Dist.*

2

7.     Defendant CCISD is a local educational agency as defined by IDEA, 20 U.S.C. § 1401(19), and, as such, is obligated to provide educational and related programs and services in compliance with the applicable federal and state statutes, regulations, and the U.S. Constitution, and is subject to the requirements of 20 U.S.C. § 1400 *et seq.,* and the regulations promulgated thereunder, including those pertaining to the use of restraint and seclusion.

8.     CCISD is a public entity as defined by 42 U.S.C. § 12131, Section 201 of the ADA, and Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 ("Section 504"), and the regulations promulgated thereunder, which prohibit discrimination and retaliation against persons with disabilities.

9.     Defendant CCISD has a duty to ensure its employees are trained to provide educational and related programs and services in compliance with the applicable federal and state statutes, regulations, and the U.S. Constitution, and is subject to the requirements of 20 U.S.C. § 1400 *et seq.,* and the regulations promulgated thereunder. CCISD is further responsible for the hiring, training and supervision of school staff and ensuring that all students attending CCJHS are afforded equal access to a public education.

10.    CCISD is also responsible for ensuring staff employs appropriate behavior interventions at school sites and for ensuring compliance with state and federal laws pertaining to behavior interventions, restraints, supervision, and training.

11.    Defendant Amanda Crawley ("Crawley"), sued individually and as an Agent of CCISD, was employed as the principal of CCJHS during the 2018-2019 school year. On information and belief, Crawley was responsible for hiring, training and supervision of school staff and ensuring that all students attending CCJHS were afforded equal access to a public education. On information and belief, Crawley was also responsible for behavior

3

interventions at the school site and ensuring compliance with state and federal laws pertaining to behavior interventions, supervision and training. All actions herein by Crawley were taken under color of state law within the course and scope of her employment with CCISD.

12.     Defendant Robert Turner ("Turner"), sued individually and as an Agent of CCISD, was employed as the assistant principal at CCJHS during the 2018-2019 school-year. Based on information and belief, Turner was responsible for handling student discipline referrals, managing student behavior, and administering discipline according to the Student Code of Conduct, Student Handbook, and state and federal law, including the implementation of a student's individualized educational plan (IEP) or Section 504 accommodation plan under both Section 504 and the IDEA.

13.     On information and belief, Turner was also responsible for behavior interventions at the school site and ensuring compliance with state and federal laws pertaining to behavior interventions and supervision, ensuring that school rules are uniformly observed, and that student discipline is appropriate and equitable, including assisting in the restraint of students. All  actions alleged herein by Turner were taken under color of state law within the course and scope of his employment with CCISD.

14.     Defendant Rebekah Schuck ("Schuck"), sued individually and as an Agent of CCISD, was employed as the assistant principal of CCJHS during the 2018-2019 school-year. On information and belief, Schuck was responsible for handling student discipline referrals, managing student behavior, and administering discipline according to the Student Code of Conduct, Student Handbook and state and federal law, including a student's individualized education plan (IEP) or Section 504 accommodation plan under both Section 504 and the IDEA. On information and belief, Schuck was also responsible for behavior interventions at

the school site and ensuring compliance with state and federal laws pertaining to behavior interventions and supervision, ensuring that school rules are uniformly observed, and that student discipline is appropriate and equitable, including interventions such as restraints of students. All actions alleged herein by Schuck were taken under color of state law within the course and scope of her employment with CCISD. At all times relevant herein, all defendants acted in concert and as agents of one another.

### III.   FACTUAL BACKGROUND AND ALLEGATIONS

15.    M.G.  was enrolled in Copperas Cove ISD in Kindergarten, and remained enrolled in the district until the end of sixth grade. During that time, M.G. received Response to Intervention (RtI) instruction due to his lack of progress in both reading and math. M.G. failed portions of the state standardized assessment year after year. M.G.'s behavior was also continually an issue and M.G.  received multiple referrals for his behavior.

16.    During the 2016-2017 school year, when M.G. was in sixth grade, M.G. was diagnosed with ADHD and was referred for consideration of a Section 504 accommodation plan by his private physician. On March 3, 2017, CCISD held its initial Section 504 accommodation meeting for M.G.

17.    Prior to the Section 504 accommodation meeting, CCISD asked teachers to rate M.G.'s behavioral and academic performance. Teachers rated M.G.'s academic performance as below average or poor in several areas. At the meeting, it was reported M.G. was failing English/Language Arts ("ELAR") and history classes.

18.    CCISD found M.G. eligible for a general education Section 504 accommodation plan based on his diagnosis of ADHD, combined type, which CCISD determined adversely affected his educational performance.

19.    CCISD provided M.G. with three accommodations: small group administration of

*Ashley G. et al v. Copperas Cove Indep. Schl. Dist.*

exams, reminders to stay on task, and preferential seating.

20.     By the end of M.G.'s sixth grade year, his disciplinary file demonstrates his behavior was in decline. M.G. had eleven reported disciplinary events ranging from slamming his backpack on the ground, refusing to do work, disrupting class, and refusal to follow directives.

21.     Parent disenrolled M.G. from CCISD for the 2017-2018 school year due to M.G.'s escalating behaviors, declining academic performance, and low self-esteem resulting from the same.

22.     M.G. received academic instruction from a virtual public charter school for that school year but was not successful. M.G. failed all of his classes and additionally did not meet standards for the state standardized assessment.

23.     At the same time, M.G. was  involved in an altercation with a family member that resulted in M.G. being placed on juvenile probation. M.G. was also psychiatrically hospitalized twice on an inpatient basis and twice on an outpatient basis.

24.     Parent re-enrolled M.G. in CCISD for the 2018-2019 school year. M.G. began eighth grade at CCJHS in August 2018.

### The September 2018 504 Accommodation Meeting

25.     Parent requested a general education Section 504 meeting following M.G.'s reenrollment in CCISD.

26.     In preparation for the meeting, M.G.'s eighth grade teachers were asked to provide input as to M.G.'s academic and behavioral functioning. Teacher input forms rated M.G. as below average or poor in: classroom work, tests, following written directions, organization skills, taking turns, adapting to new situations, accepting responsibility for actions, and interacting with staff and in making friends.

*Ashley G. et al v. Copperas Cove Indep. Schl. Dist.*

27.     M.G.'s psychiatrist provided CCISD with an Other Health Impairment ("OHI") form indicating M.G. was being treated for Autism Spectrum Disorder, Oppositional Defiance Disorder ("ODD"), and Dysthymic Disorder (depression).

28.     Parent was also asked to complete an informational form before the Section 504 meeting. Parent indicated M.G. had been psychiatrically hospitalized on an in-patient basis twice while in seventh grade and was diagnosed with bi-polar disorder, anxiety and depression. Parent also noted M.G. had trouble using coping skills when upset and attended a psychiatry appointment every other Thursday to address his issues.

29.     During the general education Section 504 accommodation meeting held on September 13, 2018, M.G.'s teachers further indicated that M.G. struggled behaviorally including with adapting to change and working with others and needed reminders to stay on task.  Teachers also reported M.G. had difficulty with task completion and writing things down.

30.     Also at this meeting, teachers reported M.G. was failing science class and barely passing his ELAR class. At the end of the first grading period, on September 25, 2018, M.G. failed science class.

31.     At the conclusion of the September Section 504 meeting, CCISD found M.G. to be a child with a disability who was again eligible for accommodations under a 504 Accommodation Plan as his disability adversely effected his educational performance.

32.     CCISD added a five-minute "cooling off" period to M.G.'s general education Section 504 accommodations to allow M.G. to physically remove himself from a situation and location and move to another location to use calming techniques as teachers reported this had been a successful strategy for M.G.

33.     There is no mention of the use of restraints M.G.'s 504 accommodation plan.

34.     CCISD did not refer M.G. for a full individual initial evaluation (FIE) under the

7

IDEA.

## The Restraints

35.     On October 30, 2018, M.G. was called to the office by Eileen Johns, the school secretary after being accused of stealing a Rice Krispie treat by another student during the lunch period. Johns began questioning M.G. regarding the Rice Krispie treat incident. At this time, Eileen Johns was not trained in behavior de-escalation strategies.

36.     M.G. denied stealing the Rice Krispie treat. M.G. was then confronted by multiple staff members about the incident including assistant principal Schuck. M.G. stood up and attempted to utilize his cooling off period by leaving the office; however, Schuck repeatedly told M.G. to sit down. Aside from telling M.G. to sit down, Schuck failed to employ any de-escalation strategies despite testifying M.G. appeared to be agitated.

37.     M.G. did not comply and attempted to leave the office; Schuck blocked his exit from the office. M.G. pushed Schuck out of the way and attempted to exit the office and access his cool-off period. According to Schuck's testimony at the special education due process hearing, M.G. did not punch, kick, or threaten Schuck at any time either prior to or after attempting to leave the office.

38.     The testimony of CCISD staff members diverge significantly as to subsequent events.

39.     According to the cumulative testimony at the hearing, M.G. was placed in two or three restraints, either one or two of which ended with M.G. being restrained on the ground in a prone restraint.

40.     It is undisputed that Turner came up from behind M.G. and restrained M.G. as he was attempting to leave the office. This restraint initially occurred in a standing position. It is unclear from the testimony if this restraint ended up with M.G. being restrained on the floor.

41.     At some point, according to Turner, M.G. broke the initial standing restraint and

attempted to leave the office. Various CCISD staff blocked the exits to the office. Turney then restrained M.G. in a standing position, even though there were no students in the hallways. When M.G. continued to struggle, Turner put M.G. in a prone restraint.

42.     While on the ground, Turner held M.G.'s torso while Crawley and Schuck alternated in restraining Student's legs. Testimony varied on the length of the restraints, the position of the restraints, and each person's level of involvement in the restraints.

43.     Schuck testified that after Turner put M.G. in the restraint on the ground, M.G. calmed himself and was released from the restraint. Schuck testified M.G. stood up but became aggressive again. Schuck testified Turner and Crawley then put M.G. in a second restraint on the floor.

44.     According to Johns, during this final restraint, Turner was laying on M.G.'s with his chest on M.G.'s back while M.G. was lying face down.

45.     M.G. was banging the side of his head against the wall and the school counselor was attempting to shield his head by placing her hand between the side of his head and the wall.

46.     At some point, CCISD staff called the Parents.  The Parents arrived on the scene and saw M.G. face down in a prone position on the floor with Turner lying across M.G.'s back and Crawley on the floor restraining M.G.'s legs. Parent testified Turner was bearing his full weight on M.G. 's back while Turner placed his feet up and against the wall as leverage to use against M.G. 's struggle to free himself.

47.     Crawley testified that after Student was released from restraint his demeanor was "solemn" and Student was "tired" with a "pretty flat affect."

48.     In Texas, restraints can only be used when an emergency situation occurs. When Turner was asked what emergency existed requiring the use of restraints, Turner said the restraints on M.G.  were more "proactive" in nature.

*Ashley G. et al v. Copperas Cove Indep. Schl. Dist.*

49.     Turner also testified at the hearing that if a restraint is done properly, a student would not be physically harmed. He also testified that M.G. was restrained in accordance with CCISD's adopted behavior intervention techniques. However, M.G. not only suffered emotional injury, but he also suffered an injury to his scapula as a result of the restraints.

50.     At the time of M.G.'s restraints, Turner, Schuck, and Crawley's certifications in behavioral de-escalation techniques had expired and were not current. Additionally, none had completed the TBSI training course required by the state of Texas.

**Involvement of the School Resource Officer**

51.     At some point during the restraint incident, a CCISD staff member summoned the school resource officer ("SRO"), Officer Kayla Long.  Officer Long arrived to the CCJHS office after the restraints of M.G. had concluded.

52.     Officer Long met with Turner, Schuck, and Crawley in Crawley's office.

53.     Upon completion of the meeting with Turner, Schuck, and Crawley, Long informed Parents that Turner and Schuck filed formal assault charges against M.G.

54.     Turner filed third degree felony assault on a public servant charges against M.G., and Schuck also filed assault charges against M.G.

55.     Turner testified the "school consequence" of filing felony assault charges against M.G. was mandatory removal from CCJHS and placement in a disciplinary alternative education program (DAEP).

56.     Schuck testified calling the police and filing assault charges against students is a common disciplinary strategy and results in a mandatory disciplinary removal to the DAEP.

57.     Following Officer Long's statement, Crawley told Parents that M.G. would be sent to the DAEP as it was a "mandatory" placement since criminal charges had been filed against M.G.

10

*Ashley G. et al v. Copperas Cove Indep. Schl. Dist.*

58.     M.G. was additionally suspended from school for the rest of that day and for the following three days.

59.     On November 1, 2019, Parent requested expedited evaluation of M.G. for special education eligibility.

60.     Parents also sought medical treatment for injuries to M.G.'s scapula.

61.     Following the restraints, M.G. demonstrated new and increased behaviors at school and at home, impaired concentration and attention in class, and ultimately, elopement from campus.

62.     M.G.'s grades, which were already in the low to failing range, did not improve. M.G. also began displaying escalating difficulty with task completion.

### The November 504 Accommodation Meeting

63.     After the restraints occurred and M.G. was permitted by CCISD to return to school, Parent requested another general education Section 504 meeting. The meeting was held on November 13, 2018.

64.     Crawley attended the meeting. During the Section 504 meeting, teachers noted M.G. "doesn't seem to have a problem with injuring himself" providing examples such as stabbing himself with a pencil, giving himself eraser burns, and wrapping his finger tightly with a string.

65.     Teachers reported concern that M.G. believed his self-injurious behavior was not harmful because he was not hurting others.

66.     Teachers described M.G. as having difficulty with transitions and exhibiting behaviors such as jumping on the table and from table to table, hiding in back cabinet areas, and covering himself up with a jacket to hide. Teachers explained M.G. has "a lot of outbursts" and other classroom disruptions such as making noises "like screaming" or "horse

11

noises," as well as doing "ninja stuff" with meter sticks and scissors. Teachers reported he seemingly was doing these things subconsciously.

67.     Teachers also reported he sometimes cannot focus and get work done and "just shuts down entirely." Two of the teachers reported M.G. struggles with longer writing assignments. M.G.'s ELAR teacher indicated he did not view himself very positively and that "pep" talks help him re-group when he exhibited task refusal.

68.     At the conclusion of the meeting, M.G.'s Section 504 accommodations included preferential seating, reminders to stay on task, small group administration of exams, a five-minute cool-off period, and a behavior intervention plan (BIP).

69.     At the conclusion of the meeting, Parent inquired about the special education evaluation. Crawley indicated CCISD was reviewing her request and cautioned her not to be surprised if CCISD denied her request.

70.     Parent also inquired as to the status of M.G.'s pending placement at DAEP. Crawley indicated that placement at DAEP would occur when CCISD received the police reports related to the incident.

71.     On December 4, 2018, Plaintiffs filed, with the Texas Education Agency (TEA), a request for a special education due process hearing pursuant to 20 U.S.C. § 1415 and Texas' implementing regulations, the Rehabilitation Act of 1973, and the Americans with Disabilities Act discussed *infra*.

72.     Despite the creation of a Section 504 accommodation plan, by the end of the semester, M.G. had 26 missing assignments, was failing ELAR, was barely passing other courses, failed many of his semester exams, and was placed in multiple prone restraints.

73.     M.G.'s behavior in school declined after the restraints occurred. Student was given at least eight principal detentions and two after school detentions for behaviors occurring

*Ashley G. et al v. Copperas Cove Indep. Schl. Dist.*

12

between December 7, 2018 and January 18, 2019.

## The Elopement

74.     On January 29, 2019, M.G. was walking down the hall with a friend when he was told by a staff member to stop horse playing and to come speak to the staff member. M.G. stopped horse playing, but continued to walk to his next class. The staff member followed M.G. and called out to someone to "call for backup."

75.     Another CCJHS staff member, Jonathan Brown, attempted to grab M.G. from the side as M.G. walked past him.

76.     M.G. then proceeded to walk out the doors of the building and left campus—leaving his bicycle behind.

77.     M.G. was initially followed by another CCJHS staff member and the school counselor. The school counselor testified she told M.G. that if he continued eloping, the police would be called.

78.     M.G. continued walking and CCISD staff members ceased following him.

79.     Parent was notified of M.G.'s disappearance only when police called her to ask if M.G. was home. Parent called the school, but no one could provide her with any information other than relating that M.G. left the campus.

80.     M.G. was missing for several hours. When M.G. returned home that evening, he was covered in scrapes and had injured his ankle. M.G. was taken for medical treatment and diagnosed with multiple scrapes and bruises as well as a sprained ankle.

81.     CCISD ordered M.G. to three days of in-school suspension.

82.     M.G. was afraid to return to school. Accordingly, Parent took M.G. to his therapist to address his anxiety and fear. M.G. reported to his therapist that he eloped from school because he did not feel safe there and did not want to be restrained again. M.G. still attends

*Ashley G. et al v. Copperas Cove Indep. Schl. Dist.*

therapy.

83.     On February 2, 2019, Parent then made the decision to immediately withdraw M.G. from CCISD and enroll M.G. in Oak Creek Academy due to fear regarding the risk of additional emotional and physical harm to M.G at the hands of CCISD.

84.     M.G.  enrolled in Oak Creek Academy the same day.

### Oak Creek Academy

85.     Oak Creek Academy is private inclusion school from Pre-K through grade 12— meaning it serves students at all levels of functioning, including students classified as gifted and talented as well as children who qualify for special education services.

86.     Oak Creek has speech therapy, occupational therapy, physical therapy, and behavior therapy available to its students, and all students additionally participate in social skills training and character education with staff.

87.     When M.G. began attending Oak Creek, his teacher assessed him at a fifth grade level in both reading and math. M.G.'s teacher at Oak Creek also noted M.G.'s self-confidence was low when he enrolled. M.G. also initially displayed task avoidance behavior, similar to his behavior at CCJHS. M.G.'s task avoidance behavior has decreased during his time at Oak Creek.

88.     M.G. is given a set amount of work each day, individualized to his ability level, and his teacher testified that M.G. was motivated to complete the work and push himself. M.G. is considered "the most trustworthy, responsible student" in his class. M.G. assists the art teacher with younger students and helps run the school store with his classmates.

89.     Academically, M.G. has made progress and is expected to be on a seventh grade level within one year. M.G.'s teacher testified that his task avoidance behavior is no longer an issue because she established consequences to address the behavior. M.G.'s confidence levels

14

*Ashley G. et al v. Copperas Cove Indep. Schl. Dist.*

have improved dramatically. M.G. is now described as a student who "doesn't like the end of the day because he loves being at school."

## The Special Education Evaluations

90.    As discussed *supra*, following the restraints of M.G., Parent requested CCISD conduct an expedited evaluation of M.G. for special education eligibility on November 1, 2019.

91.    Parent also obtained a private psychoeducational evaluation by Dr. Lesli Doan. Dr. Doan testified at the special education due process hearing as an expert witness.

92.    On March 31, 2019, Dr. Doan completed her report of M.G. Dr. Doan found M.G. has a cognitive deficit in short-term memory with commensurate academic deficits in the qualifying areas of reading fluency, reading comprehension, and written expression and qualified for special education as a student with specific learning disabilities ("SLD"). Dr. Doan testified her report would have been completed sooner than it was had CCISD cooperated in the process.

93.    Dr. Doan also determined that M.G. should additionally qualify as a student eligible for services under IDEA for other heath impairment ("OHI") for ADHD based on her evaluation, M.G.'s lack of progress, and on M.G.'s diagnosis of ADHD.

94.    CCISD completed its full initial individual evaluation ("FIE") of M.G. on April 4, 2019. CCISD's evaluator concluded M.G. has IDEA qualifying disabilities including a Specific Learning Disability ("SLD") in reading comprehension, and an OHI for ADHD.

95.    However, the CCISD FIE made no recommendation as to whether or not M.G. had a "need" for specialized instruction and failed to recommend eligibility for special education services. CCISD's evaluator would not provide a direct answer when asked specifically if it was her recommendation to the Admission Review and Dismissal Committee ("ARDC") that

15

*Ashley G. et al v. Copperas Cove Indep. Schl. Dist.*

M.G. be found eligible for special education services based on a need for specialized instruction.

96.     Several other staff members testified that M.G.'s 504 plan was sufficient to address his needs.

97.     At the time of this filing, an ARDC meeting has not been convened to determine Michael G.'s eligibility for specialized instruction.

### IV.     The Decision of the SEHO

98.     After filing for a special education due process hearing on December 4, 2018, the case was assigned to Ian Spechler, Special Education Hearing Officer ("SEHO") and was entitled *M.G. b/n/f Ashley and Richard G., Petitioners, v. Copperas Cove ISD, Respondent,* Texas Education Agency ("TEA"), Docket No. 096-SE-1218.

99.     On February 22, 2019, Plaintiffs filed their first amended request for a due process hearing.  The amended hearing request sought, *inter alia,* that the Special Education Hearing Officer ("SEHO") find:

a) The statute of limitations period is tolled due to an exception;

b) CCISD failed procedurally and substantively in its affirmative Child Find duty to identify, locate and evaluate M.G. as a student with a disability who requires special education services in a timely manner;

c) CCISD failed to timely and comprehensively evaluate M.G.;

d) CCISD failed to classify M.G. as a student eligible for special education services which resulted in loss of educational opportunity;

e) CCISD failed procedurally and substantively to provide M.G.  a free appropriate public education ("FAPE");

f) CCISD failed to offer or develop a reasonably calculated Individualized

*Ashley G. et al v. Copperas Cove Indep. Schl. Dist.*

16

Educational Program ("IEP") to M.G. in his least restrictive environment ("LRE") including but not limited to providing appropriate positive behavioral support strategies through an appropriate Behavioral Intervention Plan ("BIP") and necessary related services;

g) CCISD denied Parents the opportunity for meaningful parental participation; and

h) Parents' unilateral placement at Oak Creek Academy is appropriate for M.G.

100. The Parents proposed the following solutions, *inter alia*, based on the information then available to them at the time, requesting the Special Education Hearing Officer ("SEHO") order:

a. CCISD to reimburse Parents for private educational evaluations in all areas of suspected disability and need;

b. CCISD to publicly place M.G. at Oak Creek Academy to ensure M.G. maintains the same rights that M.G. would have if educated at CCISD;

c. Order the ARDC to convene upon receipt of the evaluation listed above and develop an appropriate IEP for M.G. based on the results of the evaluations which:

1. accurately reflects the M.G.'s present levels of academic achievement and functional performance;

2. includes appropriate goals and short-term objectives that address the M.G.'s academic, behavior, and related service needs;

3. includes appropriate related services including but not limited to: assistive technology supports and services; speech therapy,

*Ashley G. et al v. Copperas Cove Indep. Schl. Dist.*

      social skills training, counseling, in-home and community-based services, and ABA therapy if warranted;

4.   identifies appropriate research-based methodologies that will be employed to address the M.G.'s academic and behavioral needs; and includes in-home parent training, support and/or counseling; and in the alternative,

5.   CCISD to reimburse Parents for out-of-pocket tuition and expenses including for: tuition at Oak Creek Academy, related services and related service evaluations, mileage reimbursement at the Texas Comptroller's rate for transportation required for M.G. to obtain reasonable and necessary educational services including for school, evaluations, related services, tutoring, and other educational services;

6.   CCISD to provide and/or fund compensatory services, including for services to which M.G. was entitled but did not receive beginning in 2013; and

7.   any additional relief the SEHO may deem just and proper upon presentation of proof in this matter.

101.   In the due process hearing request, Plaintiffs also raised claims under Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act. Prior to the commencement of the hearing in this matter, the SEHO dismissed all claims arising under Section 504 and the ADA as being outside the SEHO's jurisdiction.

102.   On March 18, 2019, the SEHO found the Texas' one year statute of limitations

*Ashley G. et al v. Copperas Cove Indep. Schl. Dist.*

applied to this case and no exception applied.

103.    The special education due process hearing was held on April 16-18, 2019.

104.    On June 14, 2019, SEHO Spechler issued a thirteen page decision finding in favor of CCISD regarding whether CCISD had timely requested consent from Parent to conduct the FIE of M.G.

105.    The SEHO declined to reach Plaintiffs' remaining claims.

## V.    FIRST CAUSE OF ACTION
### IDEA and Texas Chapter 89
### Plaintiffs v. CCISD

106.    Plaintiffs refer to, and incorporate by reference, all of the preceding paragraphs as though fully set forth herein.

107.    The SEHO's Decision does not correctly interpret the standards enunciated in the IDEA, its regulations, and Chapter 89, Texas Administrative Code.

108.    The SEHO's findings of fact and conclusions of law are erroneous, contrary to established case law, and unsupported by the preponderance of evidence contained in the Administrative Record.

109.    The SEHO erred in failing to make findings of fact or conclusions of law regarding the majority of Plaintiffs' claims delineated in their special education due process hearing request. By way of example, the SEHO erred by failing to determine CCISD's evaluation was not timely or comprehensive; by failing to find M.G. is eligible for special education services for a specific learning disability and under the category of Other Health Impaired ("OHI"); by failing to find M.G. was denied a free appropriate public education ("FAPE"), and by failing to determine M.G.'s private placement was appropriate.

110.    The SEHO erred legally and factually in finding that CCISD timely complied with its

*Ashley G. et al v. Copperas Cove Indep. Schl. Dist.*

19

Child Find duty under the IDEA because CCISD attempted to obtain consent from Parent to conduct the FIE of M.G. within a reasonable time.

111.    The SEHO erred in failing to rule on any of Petitioners' remaining issues erroneously stating that CCISD had no obligation to provide a FAPE as an ARDC had not convened.

112.    The SEHO erred in failing to make a conclusion regarding the comprehensiveness and appropriateness of CCISD's evaluation as it concerned M.G.'s related service needs. .

113.    The SEHO erred in failing to make a determination as to whether the Plaintiffs were entitled to independent educational evaluations and/or reimbursement for same.

114.    The SEHO was incorrect factually and as a matter of law in failing to rule on, and deferring, the issue of M.G.'s eligibility to CCISD when the issue was properly before the SEHO.  The SEHO erred by assuming that CCISD would "likely" find M.G. eligible for special education services as a student with an OHI at some undetermined point in the future, despite the preponderance of the evidence indicating otherwise; and by doing so, the SEHO erroneously found M.G. could not have been denied a FAPE. *Decision* at 9.

115.    The SEHO made no findings regarding Plaintiffs' claim that CCISD impermissibly allowed the use of police as a disciplinary measure against M.G. in order to effectuate his removal and to avoid CCISD's obligation to provide M.G. a FAPE.

116.    The SEHO erred factually and legally in determining CCISD did not have an obligation to provide FAPE because CCISD had not yet convened an ARDC meeting to determine eligibility.

117.    The SEHO erred in failing to make any findings and/or conclusions of law regarding the parents being denied meaningful parental participation as CCISD failed to timely and comprehensively evaluate M.G., and CCISD failed to conduct an ARDC to determine eligibility, and failed to make an offer of FAPE.

*Ashley G. et al v. Copperas Cove Indep. Schl. Dist.*

118.    The SEHO erred by improperly excluding Plaintiffs' properly authenticated and relevant evidence related to compensatory services.

119.    The SEHO's decision is not based upon a fair and knowledgeable review of the evidence presented in the hearing.

## VI.    SECOND CLAIM FOR RELIEF

### Denial of Services and Discrimination in Violation of the ADA and Section 504

### Plaintiffs v. CCISD

120.    Plaintiffs incorporate and reallege by reference all the foregoing paragraphs as if they were fully set forth herein.

121.    M.G. is a qualified individual pursuant to Section 504 and the ADA with disabilities of autism, bipolar disorder, depression, ADHD, and specific learning disabilities, which impact his major life activities of learning, reading, writing, communicating, and concentrating.

122.    Effective March 3, 2017, M.G. was entitled to the protections of the "Public Services" provision of Title II of the Americans with Disabilities Act of 1990. Title II, Subpart A prohibits discrimination by any "public entity," including any state or local government, as defined by 42 U.S.C. § 12131, Section 201 of the ADA and Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 ("Section 504"), and the regulations promulgated thereunder prohibit discrimination against persons with disabilities.

123.    Defendant CCISD, as a public entity and recipient of federal funds, has a duty not to discriminate against M.G., or children like him, as stated by 42 U.S.C. §12132 and 29 U.S.C. § 794.

124.    Section 504 prohibits the exclusion of persons with disabilities from the participation in, or being denied the benefits of, or being subjected to discrimination under, any program

*Ashley G. et al v. Copperas Cove Indep. Schl. Dist.*

or activity receiving federal financial assistance.

125.   Defendant CCISD is liable under both the ADA and Section 504 of the Rehabilitation Act of 1973 for the vicarious actions of its agents, employees, and/or servants.

126.   Defendant CCISD, by and through its agents and employees Rebekah Shuck, Amanda Crawley, and Robert Turner, discriminated against M.G. by:

a)   unlawfully restraining M.G. multiple times under circumstances that did not justify said restraint under state law and regulations concerning restraint;

b)   confronting M.G. and escalating M.G.'s anxiety while failing to allow M.G. to access the Section 504 accommodations to which he was entitled, namely, a cooling off period;

c)   restraining M.G. when he attempted to utilize his Section 504 accommodations, namely, the cooling-off period;

d)   restraining M.G. in a dangerous prone restraint position(s), causing injury to M.G.'s scapula as he struggled against the abuse;

e)   pursuing felony charges against M.G. for the purpose of ensuring M.G. would automatically be sent to the disciplinary alternative education program (DAEP) for an undisclosed amount of time;

f)   impermissibly using the police and felony charges as a disciplinary technique to punish M/G. and to avoid its FAPE obligation under Section 504;

g)   excluding M.G. from school following the unlawful and excessive restraints and otherwise denying him access to the education programming; and

h)   causing injury to M.G. and exacerbating M.G.'s anxiety, leading to increased behavioral incidents and, eventually, M.G.'s elopement from the school campus.

*Ashley G. et al v. Copperas Cove Indep. Schl. Dist.*

127.   As a direct and proximate result of the discrimination he faced, M.G. sustained physical injuries and suffered severe emotional harm.

## VII.   THIRD CLAIM FOR RELIEF
### Unreasonable Seizure and Excessive Use of Force Pursuant to 42 U.S.C. § 1983
### Plaintiffs v. Crawley, Turner, and Schuck, each in their individual capacities

128.   Plaintiffs refer to, and incorporate by reference, all of the preceding paragraphs as though fully set forth herein.

129.   M.G. has a constitutional right under the Fourth Amendment to the United States Constitution to be free from unreasonable seizures and to be secure in his person and to maintain his bodily integrity against unreasonable assaults of his person.

130.   Defendants Turner, Shuck and Crawley, acting under color of law, each individually and collectively, deprived M.G. of rights created by the Constitution and federal law.

131.   The actions of Defendants Turner, Shuck and Crawley were objectively unreasonable under the circumstances and in light of the educational objectives M.G. was trying to achieve.

132.   Defendants Turner's, Schuck's, and Crawley's conduct in physically seizing and improperly restraining M.G. multiple times as a proactive measure unlawfully subjected him to excessive, objectively unreasonable, and unnecessary physical force that was excessive of the need and which resulted in M.G.'s injury.

133.   As a proximate result of the violations alleged herein above, Plaintiff has suffered damages as heretofore alleged.

## VIII.   FOURTH CLAIM FOR RELIEF
### Failure to Train Pursuant to 42 U.S.C. § 1983
### Plaintiffs v. CCISD

23

134.    Plaintiffs refer to, and incorporate by reference, all of the preceding paragraphs as though fully set forth herein.

135.    At the time of the restraints, CCISD had adopted a policy that staff development and training shall be provided to a principal by CCISD in accordance with Section 21.3541, Texas Education Code.  CCISD, DMA Legal.

136.    The staff administrators testified that they had conducted restraints prior to the restraint of M.G.  Crawley had not been trained, or her training had lapsed, regarding the proper use of de-escalation and positive behavior interventions  as mandated Section 37.0021, Texas Education Code, or regarding the use of restraints and time-outs as required by Section 89.1053, Texas Administrative Code when she participated in the restraint of M.G. and therefore, CCISD is municipally liable for such a failure.

137.    CCISD acted with deliberate indifference by failing to adopt a policy relating to training of its principals specifically as to restraint of students with disabilities and it was so obvious that such a failure would likely result in deprivation of rights. The need for training of staff that comes into contact with students is so obvious it is required by Section 89.1053, Texas Administrative Code which requires training on de-escalation techniques and restraints of students. CCISD failed to ensure training of its campus administrative staff members, including administrators, that were likely to conduct restraints on students, and the inadequacy to do is resulted in the violation of M.G.'s constitutional rights. CCISD can reasonably be said to have been deliberately indifferent to the need to do so in failing to train the administrators at CCJHS who are responsible for discipline and restraints which resulted in injury to M.G.

138.    CCISD has a custom or policy of failing to train numerous employees in behavior and the proper way to restrain a student, including the three school staff administrators who

*Ashley G. et al v. Copperas Cove Indep. Schl. Dist.*

24

improperly restrained M.G. in a series of prone restraints resulting in injury to M.G.'s scapula and such failure amounted to deliberate indifference by CCISD as to the rights of M.G. with whom its employees came in contact. The acts and omissions of CCISD described herein violated the clearly established rights of M.G.

## IX.    FOURTH CLAIM FOR RELIEF

### Failure to Train – Supervisory Capacity Pursuant to 42 U.S.C. § 1983

### Plaintiffs v. Crawley, in her individual  capacity and as Agent of CCISD

139.    As staff development for educators other than the principal is predominantly campus-based and approved at the campus level according to CCISD policy (DMA Legal), Defendant Crawley, who has a supervisory role over Turner and Schuck, acting under color of law and with deliberate indifference, individually violated M.G.'s rights under the Fourth Amendment to the U.S. Constitution by actions, including but not limited to, acting with deliberate indifference to the risk of harm to M.G., failing to adequately train and supervise the faculty and staff she was directly responsible for in the use of force and restraint when seizing students with disabilities, failing to ensure implementation of M.G.'s BIP; allowing and/or encouraging the impermissible use of police as a disciplinary measure, failing to implement M.G.'s BIP related to discipline and behavior, and implementing unconstitutional policy and/or practices.

140.    Based on information and belief, Crawley failed to ensure Schuck and Turner had been trained in Texas Behaivior Support Initiative ("TBSI") and in appropriate use of restraint at the time M.G. was restrained.

141.    Even if Schuck and Turner had been trained in the past in SAMA techniques, the restraints, were conducted in direct contravention of behavior management training and the recommended SAMA response which resulted in M.G. being placed in at least one three-

*Ashley G. et al v. Copperas Cove Indep. Schl. Dist.*

person prone restraint. The United States Department of Education recommends prone restraints not be used under any circumstance; however, Turner lying chest down on top of M.G.'s back, with his full weight bearing down on M.G., with Schuck and Crawley assisting, caused physical injury and emotional harm to M.G.

142.    Turner testified the risk of death or injury is eliminated when restraints are conducted properly. A reasonable inference can be drawn that Crawley, as a principal, was aware of the risk of serious harm to students who are restrained, especially when staff is not trained.

143.    Crawley failed to ensure that all personnel received instruction and training in professionally accepted practices and standards regarding behavior management and the use of restraints as required by the Section 89.1053, Texas Administrative Code, which resulted in a violation of M.G.'s constitutional rights under the Fourth Amendment.

144.    The acts and omissions of Defendant Crawley, as an individual, described herein violated the clearly established rights of M.G. of which reasonable people in Defendant's position knew of should have known. Defendant's actions were objectively unreasonable in light of the circumstances.

## X.    FIFTH CLAIM FOR RELIEF
### Texas Intentional Tort – Assault
#### Plaintiffs  vs. Turner, Schuck, Crawley, each and in their individual capacities

145.    Plaintiffs incorporate and reallege by reference all the foregoing paragraphs as if they were fully set forth herein.

146.    Defendants Turner, Schuck, and Crawley, intentionally, recklessly, or knowingly placed M.G.  in reasonable and serious apprehension of harmful and offensive contact, had the then present ability to do violence toward M.G., and caused physical injury to M.G.

147.    Defendant's Turner, Schuck, and Crawley recklessly and unreasonably exposed M.G.

*Ashley G. et al v. Copperas Cove Indep. Schl. Dist.*

to a substantial risk of serious bodily injury by placing him in at least two improper prone restraints which resulted in injury to M.G.'s scapula.

148.    Turner, Schuck, and Crawley used excessive force which resulted in bodily injury to M.G.

149.    The intentional assaults committed by Defendants Turner, Schuck, and Crawley upon M.G. were a proximate cause of injuries and damages, including but not limited to serious painful and injuries and emotional trauma.

## XI.    PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request that this Court accept jurisdiction, receive all of the records of the administrative proceedings as required by the IDEA, incorporate all of the facts and circumstances set forth above, accept additional evidence as will be offered, and enter judgment against CCISD and grant the relief requested in Plaintiff's due process hearing request and closing brief. Specifically, Plaintiffs request this Court:

i)      Enter a judgment REVERSING and VACATING the Hearing Officer's decision and erroneous factual findings and conclusions of law;

ii)     Find M.G. eligible for special education services as a student with specific learning disabilities in the areas of reading comprehension, reading fluency, and written expression as well as OHI for ADHD;

iii)    Find CCISD procedurally and substantively denied M.G. a FAPE;

iv)     Find CCISD denied the parents meaningful parental participation;

v)      AWARD Plaintiffs all relief requested in its due process hearing request and closing brief

vi)     ORDER additional relief this Court deems appropriate.

vii)    AWARD Plaintiffs reasonable attorneys' fees and related costs, incurred in

*Ashley G. et al v. Copperas Cove Indep. Schl. Dist.*

the administrative proceedings;

viii)    AWARD Plaintiffs reasonable additional attorney fees and costs incurred in pursuing the current action;

ix)    AWARD Plaintiffs prejudgment and post-judgment interest on any and all awards of fees and permissible costs, and

x)    AWARD such other and further relief to which Plaintiffs are entitled.

Wherefore, M.G., by and through his parents and Next Friends, Ashley and Richard G., prays for judgment against the Defendants, jointly and severally, for an amount which will fully and fairly compensate him for his injuries and damages as alleged herein; for interests and costs as allowed by law; for attorneys' fees as allowed by law; for damages including but not limited to punitive damages against the CCISD and against individual Defendants Robert Turner, Rebekah Schuck, and Amanda Crawley, and for such other and further relief that the court deems just and proper

Respectfully submitted this 15th day of July 2019.

Cuddy Law Firm, PLLC
3809 S. 2nd Street, Ste. B300
Austin, TX 78704
Telephone: (512) 649-3191
Facsimile: (512) 649-1217

By: /s/ Elizabeth Angelone
Elizabeth Angelone
State Bar No. 24077349
Email: eangelone@cuddylawfirm.com
Meera Krishnan
State Bar No. 24086606
Email: Mkrishnan@cuddylawfirm.com
Counsel for Plaintiffs

*Ashley G. et al v. Copperas Cove Indep. Schl. Dist.*

*Ashley G. et al v. Copperas Cove Indep. Schl. Dist.*