**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **ASHLEY G. AND RICHARD G. AS PARENTS/GUARDIANS/NEXT FRIENDS OF M.G., A MINOR INDIVIDUAL WITH A DISABILITY** *Plaintiffs*, | § § § § § | |
| **v.** | § § | **CIVIL ACTION 6:19-cv-420-ADA-JCM** |
| **COPPERAS COVE INDEPENDENT SCHOOL DISTRICT, AMANDA CRAWLEY, in her individual capacity, ROBERT TURNER, in his individual capacity, AND REBEKAH SHUCK, in her individual capacity,** *Defendants*. | § § § § § § § | |

## ORDER GRANTING INDIVIDUAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DEFENDANT CCISD'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Came on for consideration this date is Defendants Amanda Crawley, Robert Turner, and Rebekah Shuck's ("Individual Defendants") Motion for Summary Judgment as well as Defendant Copperas Cove Independent School District's ("CCISD") Motion for Partial Summary Judgment. ECF #25. Plaintiffs Ashley G. and Richard G., as parents/guardians/next friends of M.G., a minor individual with a disability, and Defendants filed responsive briefing. Pls.' Resp., ECF #36; Defs.' Reply, ECF #39. After careful consideration of the above briefing, the Court **GRANTS** Defendants' Motion.

## I.    BACKGROUND

Plaintiffs Ashley G. and Richard G. are the parents of M.G., a fourteen-year-old minor with disabilities. Pls.' Compl., ECF #1 at 2. M.G. was a student of Copperas Cove Independent School District, a local educational agency and public entity, who attended various CCISD schools from Kindergarten to sixth grade. *Id.* at ¶ 4–5. Throughout that period, M.G. struggled academically and behaviorally and was eventually placed on a Section 504 accommodation plan for ADHD. *Id.* at ¶ 7, 15–20. M.G. did not return to CCISD for seventh grade, but was instead schooled through a virtual public school, where he failed all his classes and did not meet state standardized assessment standards. *Id.* at ¶ 21–22. Additionally, M.G. was placed on juvenile probation and psychiatrically hospitalized twice during his year of virtual schooling. *Id.* at ¶ 23. M.G. was re-enrolled at CCISD and placed at Copperas Cove Junior High School (CCJHS) for eighth grade. *Id.* at ¶ 24. Defendant Amanda Crawley was the principal and Defendants Robert Turner and Rebekah Shuck were assistant principals at CCJHS at the time of the alleged incident. *Id.* at ¶ 11–14.

In September of 2018, M.G.'s parents requested a general education meeting to re-evaluate M.G.'s Section 504 accommodation plan pursuant to his re-enrollment and new diagnoses of Autism Spectrum Disorder, Oppositional Defiance Disorder, and depression. *Id.* at ¶ 25–27. M.G.'s parents also disclosed that M.G. had been hospitalized for bi-polar disorder, anxiety, and depression and had trouble using coping skills when he was upset, for which he was being treated regularly. *Id.* at ¶ 28. M.G.'s teachers noted at the meeting that he struggled significantly academically and behaviorally. *Id.* at ¶ 29–30. The Section 504 plan that arose from the September 2018 meeting included a five-minute cooling off period but did not refer to restraints. *Id.* at ¶ 32–33.

On October 30th, 2018, M.G. was accused by another student of stealing a Rice Krispie Treat. *Id.* at ¶ 35. M.G. was called to assistant principal Shuck's office, where he denied taking the treat before standing up and attempting to leave the office. *Id.* at ¶ 36. Shuck requested that the secretary call M.G.'s mother to calm him down. Defs.' Mot. at 7. While waiting for M.G.'s mother to arrive, assistant principal Turner was notified that Shuck was having trouble with a student in her office by a CCJHS teacher. Defs.' Ex. C, ECF #25-9, at ¶ 5. Upon arriving at Shuck's office, Turner noticed that M.G. was standing in a tense posture and asked a student outside of Shuck's office if everything was okay. *Id.* at ¶ 6. Upon hearing the student answer, M.G. began yelling at the student, then attempted again to elope from the office. *Id.*

Upon being told to sit down repeatedly by Shuck while she blocked the door, M.G. pushed Shuck out of the way and into a wall. Pls.' Compl. at ¶ 37. Plaintiffs contend that this was in exercise of his 504 plan "cooling off period," but Defendants claim that, not only was Shuck unaware of the 504 accommodations provided to M.G., but the period only applied in academic settings and did not allow for M.G. to escape disciplinary action. *Id.;* Pls.' Resp. at 5–6; Defs.' Reply at 3. At this point, the first of two restraints on M.G. was initiated. Pls.' Compl. at ¶ 40; Defs.' Ex. C at ¶ 8. Turner placed M.G. in a SAMA standing containment, where he wrapped his arms around M.G.'s chest in a hug-like motion. Defs.' Ex. C at ¶ 8. M.G. struggled against the restraint, headbutted Turner, and escaped the restraint. *Id.* Turner, again, attempted to place M.G. in a standing restraint and M.G. bit Turner's arm. *Id.* Shuck, upon Turner stating that M.G. bit his arm, called the police. *Id.* Principal Crawley arrived around this time and attempted to verbally de-escalate M.G., although the methodology of the verbal de-escalation is in dispute. *Id.*; Pls.' Resp. at 8. Turner loosened the restraint on  M.G. after he appeared calm, but that led to M.G. re-escalating and kicking Turner in the shin. Defs.' Ex. C at ¶ 9.

Turner informed M.G. that if he continued to kick, the containment would be taken to the ground. *Id.* M.G. continued to kick, so Turner guided M.G. to the ground by placing one knee on the ground while in the hug containment, then turning to position M.G. on the ground in a way that ensured Turner's body hit the ground first and that Turner's body weight was not placed upon M.G. *Id.*; Defs.' Ex. B, ECF # 25-8, at ¶ 8. M.G. was never face down or prone. Defs.' Ex. B at ¶ 8. M.G. continued to kick his legs, so Shuck secured his legs to ensure he would not injure Turner or herself. *Id.* at ¶ 9. Crawley continued to attempt to de-escalate verbally; again, the methodology she employed is in dispute. *Id.* at ¶ 10; Pls.' Resp. at 8. Crawley then took over securing M.G.'s legs from Shuck, as the force of M.G.'s kicks were lifting Shuck off the ground. Defs.' Ex. A, ECF #25-2, at ¶ 5. A CCJHS Counselor arrived while M.G. was on the ground and attempted to verbally de-escalate while using her hand to prevent M.G. from hitting his head while thrashing in a way that was self-injurious. *Id.* at ¶ 7.

Once M.G.'s parents arrived, Crawley and Turner planned to release the hold, but M.G.'s father asked them to continue the containment until M.G. calmed. *Id.* Crawley and Turner continued the containment for several minutes while M.G.'s father spoke to him until signaled to release. *Id.* The school resource officer arrived shortly after the restraint concluded. Pls.' Compl. at ¶ 51. Originally, Turner and Shuck filed formal assault charges against M.G., but only Turner ultimately pursued charges. Pls.' App'x of Material Facts, ECF #36-1, at ¶ 179–83. The status, outcome, or relevancy of these charges is unclear from the record.

M.G. was then examined by a CCISD nurse for shoulder pain immediately after the restraint. Defs.' Mot. at 9. The nurse noted that M.G. had a dry, cracked lip, pain to the left scapula, and marks from previous self-injury to his hands. Pls.' Resp. at 13. In the days after the accident, M.G.'s scapula was x-rayed and he was referred to an orthopedist for a possible Salter-Harris

fracture. *Id.* The orthopedist stated that the injury was suffered due to an assault and caused pain and limited movement but was unable to confirm a Salter-Harris fracture. *Id.* The orthopedist reasoned that -the injury was attributable to M.G. struggling against the restraint. *Id.* The Plaintiffs also content that the incident was traumatizing and led to unspecified new and increased behaviors, difficulty in concentration, and attempts to elope from campus. *Id.* M.G., after a second incident with school administrators, eloped from campus and did not come home for hours. *Id.* at 13–14. He did not return to CCJHS but was transferred to a private school where he was evaluated by a therapist who stated that CCISD staff's mere presence caused M.G. anxiety. *Id.* at 14. M.G. remains at the private school. Pls.' Compl. at ¶ 5, 83–84.

## II.    LEGAL STANDARD

**A.**  Federal Rule of Civil Procedure 56(a)

"Summary judgment is required when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (quoting Fed. R. Civ. P. 56(a)). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nola Spice Designs, L.L.C. v. Haydel Enters.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by

competent summary judgment proof that there is an issue of material fact warranting trial." *Id.* at 323, 325 (quotation marks omitted). The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact but does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

"Once the moving party [meets her or his initial burden], the non-moving party must 'go beyond the pleadings and by her [or his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Nola Spice Designs, L.L.C.*, 783 F.3d at 536 (quoting *LHC Grp., Inc.*, 773 F.3d at 694). The nonmovant must identify and articulate how specific evidence in the record supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008); see also *Nola Spice*, 783 F.3d at 536.

**B. 42 U.S.C. § 1983**

Plaintiffs can establish a prima-facie case under 42 U.S.C. § 1983 "by establishing: (1) a violation of a federal constitutional or statutory right; and (2) that the violation was committed by an individual acting under the color of state law." *Estate of Baker v. Castro*, CIVIL ACTION NO. H-15-3495, 2018 U.S. Dist. LEXIS 170949, at *17 (S.D. Tex. Aug. 31, 2018) (citing *Doe v. Rains Cnty. Indep. Sch. Dist.*, 66 F.3d 1402, 1406 (5th Cir. 1995)).

**1. Excessive Force**

For an excessive force complaint, Plaintiffs must show "(1) an injury; (2) that the injury resulted directly from the use of excessive force; and (3) that the excessiveness of the force was unreasonable." *Carnaby v. City of Hous.*, 636 F.3d 183, 187 (5th Cir. 2011) (citing *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007)). "[E]ven insignificant injuries may support an excessive force claim, as long as they result from unreasonably excessive force…." *Sam v. Richard*, 887 F.3d 710, 713 (5th Cir. 2018). "In short, 'as long as a plaintiff has suffered 'some injury,' even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force.'" *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017) (quoting *Brown v. Lynch*, 524 F. App'x 69, 79 (5th Cir. 2013)). "The objective reasonableness of the force… depends on the facts and circumstances of the particular case, such that the need for force determines how much force is constitutionally permissible." *Collier v. Montgomery*, 569 F.3d 214, 218–19 (5th Cir. 2009).

**2. Unreasonable Seizure under the Fourth Amendment**

"A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, by means of physical force or a sufficient show of authority, restrained an individual's liberty." *Campbell v. McAlister*, No. 97-20675, 1998 U.S. App. LEXIS 39300, at

*9 (5th Cir. Oct. 20, 1998)(citing *California v. Hodari D.*, 499 U.S. 621, 626 (1991)). "Whether a given seizure meets the reasonableness standard 'is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.'" *Id.* (quoting *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 652–53 (1995)). Determining the reasonableness of a seizure involves a determination of (1) whether the search was justified at its inception and (2) whether it was reasonably related in scope to the circumstances that justified the seizure in the first place. *New Jersey v. T. L. O.*, 469 U.S. 325, 341 (1985). The reasonableness inquiry is objective: "the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *Graham v. Connor*, 490 U.S. 386, 397 (1989). "The Supreme Court has recognized the unique backdrop that schools present for the operation of the Fourth Amendment, specifically noting that 'the preservation of order and a proper educational environment requires close supervision of schoolchildren, as well as the enforcement of rules against conduct that would be perfectly permissible if undertaken by an adult.'" *Hassan v. Lubbock Indep. Sch. Dist.*, 55 F.3d 1075, 1079 (5th Cir. 1995) (quoting *T.L.O.*, 469 U.S. at 339). The Fourth Amendment does not capture "school officials restraining a 'raging' child or placing [him] in a timeout room." *Doe v. S&S Consol. I.S.D.*, 149 F. Supp. 2d 274, 287 (E.D. Tex. 2001). "[P]reservation of order in the schools allows for closer supervision and control of school children than would otherwise be permitted under the Fourth Amendment." *Flores v. Sch. Bd.*, 116 F. App'x 504, 510 (5th Cir. 2004).

### 3.  Municipal Liability

To establish municipal liability under 42 U.S.C. § 1983, Plaintiffs must show that their constitutional rights were violated through the execution of an official policy by CCISD. *Eugene*

*v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1304 (5th Cir. 1995), *cert. denied*, 517 U.S. 1191 (1996).

Otherwise, the municipality is entitled to immunity. The Fifth Circuit has defined official policy

as:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted
> and promulgated by the [district] … or by an official to whom the [district] has
> delegated policy-making authority; or
>
> 2. A persistent, widespread practice of [district] officials or employees, which,
> although not authorized by officially adopted and promulgated policy, is so
> common and well settled as to constitute a custom that fairly represents [district]
> policy. Actual or constructive knowledge of such custom must be attributable to
> the governing body of the district or to an official to whom that body had
> delegated policy-making authority.

*Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992). "Texas law is clear that final policymaking

authority in an independent school district . . . rests with the district's board of trustees." *Jett v.

Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993). "In order for municipal liability to

attach, plaintiffs must offer evidence of not simply a decision, but a 'decision by the [board]

itself to violate the Constitution.'" *Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 759 (5th

Cir. 1993) (quoting *City of Canton v. Harris,* 489 U.S. 378, 395 (1989)). "The plaintiff must also

demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind

the injury alleged." *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382,

1388 (1997). "The description of a policy or custom and its relationship to the underlying

constitutional violation, moreover, cannot be conclusory; it must contain specific facts." *Spiller

v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997).

"Acts that do not rise to the level of official policy may nonetheless create governmental liability if they are sufficiently widespread and pervasive to constitute a 'custom' or 'practice.'" *A.W. v. Humble Indep. Sch. Dist.*, 25 F. Supp. 3d 973, 1001 (S.D. Tex. 2014). "A customary policy consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct." *Zarnow v. City of Wichita Falls Tex.*, 614 F.3d 161, 169 (5th Cir. 2010), *cert. denied*, 131 S. Ct. 3059 (2011). "A pattern requires similarity and specificity; '[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question.'" *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009) (quoting *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)). The Plaintiffs must show that the Board of Trustees acted with deliberate indifference by disregarding a known or obvious consequence of its actions. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998); *Bd. of the Cnty. Comm'rs*, 520 U.S. at 410. "[T]he Board must have actual or constructive notice of ongoing constitutional violations at the school; otherwise the Board's failure could not be a conscious or deliberate choice." *Yara v. Perryton Indep. Sch. Dist.*, 560 F. App'x 356, 360 (5th Cir. 2014).

### 4. Failure to Train

"In order to establish supervisor  liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates." *Gates v. Tex. Dep't of Protective & Regul. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008) (internal quotation marks and citation omitted, alterations and emphasis in original). A supervisor may be liable for failure to supervise or train if: "(1) the supervisor either failed to

supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009). "A supervisory official may be held liable . . . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Gates*, 537 F.3d at 435.

"A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights." *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992). "Obviously, the analysis for objective reasonableness is different from that for deliberate indifference . . .. Otherwise, a successful claim of qualified immunity in this context would require defendants to demonstrate that they prevail on the merits, thus rendering qualified immunity an empty doctrine." *Hare v. City of Corinth*, 135 F.3d 320, 328 (5th Cir. 1998). "[T]he subjective deliberate indifference standard serves only to demonstrate the clearly established law in effect at the time of the incident." *Id.* "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011) (internal quotation marks omitted, alteration in original) (quoting *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997)). "Mere negligence or even gross negligence is not enough; 'a plaintiff usually must demonstrate a pattern of [constitutional] violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation.'" *Yara*, 560 F. App'x at 360 (quoting *City of N. Richland Hills*, 406 F.3d at 381).

"To establish that a state actor disregarded a known or obvious consequence of his actions, there must be 'actual or constructive notice' 'that a particular omission in their training program causes . . . employees to violate citizens' constitutional rights' and the actor nevertheless 'choose[s] to retain that program.'" *Porter v. Epps*, 659 F.3d 440, 446–47 (5th Cir. 2011) (quoting *Connick*, 131 S. Ct. at 1360). "'A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference,' because '[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.'" *Id.* (quoting *Connick*, 131 S. Ct. at 1360); *see, also, Yara*, 560 F. App'x at 360.

## C. Immunity

The Defendants assert various theories of immunity from liability:

### 1. Qualified Immunity

"Government officials are entitled to qualified immunity from liability for civil damages 'unless [(1)] the official violated a statutory or constitutional right [(2)] that was clearly established at the time of the challenged conduct.'" *Collier*, 569 F.3d at 218–19 (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). A bifurcated analysis is employed in assessing qualified immunity. *See, e.g.,* C*ollins v. Ainsworth,* 382 F.3d 529, 537 (5th Cir. 2004). The Court, first, must decide whether the Plaintiffs have shown a violation of a clearly established constitutional right. *See id.* "A right is 'clearly established' if its contours are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Cobarobio v. Midland Cnty.*, No. MO:13-CV-00111-RAJ, 2015 U.S. Dist. LEXIS 193948, at *47 (W.D. Tex. Jan. 7, 2015) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). A court must then

address whether the Defendants' "actions were objectively reasonable" considering "law which was clearly established at the time of the disputed action." *Collins*, 382 F.3d at 537. "The defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated" the Plaintiffs' asserted constitutional right. *Thompson v. Upshur County*, 245 F.3d 447, 457 (5th Cir. 2001) (internal citations omitted).

"The issue of qualified immunity is generally a question of law for the court." *Cobarobio*, 2015 U.S. Dist. LEXIS 193948, at *48 (citing *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)). "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005) (quoting *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam)). "The Fifth Circuit has specifically held that speculation and conclusory allegations are not sufficient to discharge the plaintiff's burden of overcoming the defense of qualified immunity." *Cobarobio*, 2015 U.S. Dist. LEXIS 193948, at *48 (citing *Lockamy v. Dunbar*, 399 F. App'x 953, 956–57 (5th Cir. 2010); *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005)).

### 2. Texas Public Official Immunity

"Texas courts have long recognized official immunity, in substance if not by name, for a variety of public officials." *Ballantyne v. Champion Builders, Inc.*, 144 S.W.3d 417, 423 (Tex. 2004). Official immunity is an affirmative defense. *Perry v. Tex. A & I Univ.*, 737 S.W.2d 106, 110 (Tex. App.—Corpus Christi 1987, writ ref'd n.r.e.). The burden is, thus, on the Defendants to establish all the elements of the defense. *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex. 1984). "Government employees are entitled to official immunity from suit arising from the

performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority." *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994).

"[P]ublic officials act within the scope of their authority if they are discharging the duties generally assigned to them." *Ballantyne*, 144 S.W.3d at 424 (citing *Chambers*, 883 S.W.2d at 658). "If an action involves personal deliberation, decision, and judgment . . . it is discretionary." *Id.* "To determine whether a public official acted in good faith, we use the objective standard adopted in *Chambers* and ask whether a reasonably prudent official, under the same or similar circumstances, could have believed that his conduct was justified based on the information he possessed when the conduct occurred." *Id.* (citing *Chambers*, 883 S.W.2d at 656). Thus, a "conclusory statement that a reasonable officer could or could not have taken some action will neither establish good faith at the summary judgment stage nor raise a fact issue to defeat summary judgment." *Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex. 1997). A public official "must prove only that a reasonably prudent officer, under similar circumstances, might have reached the same decision." *Telthorster v. Tennell*, 92 S.W.3d 457, 465 (Tex. 2002).

### 3.  Immunity under the Texas Education Code

"A professional employee of a school district is not personally liable for any act that is incident to or within the scope of the duties of the employee's position of employment and that involves the exercise of judgment or discretion on the part of the employee, except in circumstances in which a professional employee uses excessive force in the discipline of students or negligence resulting in bodily injury to students." Tex. Educ. Code § 22.0511(a). A "'professional employee of a school district' includes: (1) a superintendent, principal, teacher, including a substitute teacher, supervisor, social worker, school counselor, nurse, and teacher's

aide employed by a school district; . . . and (6) any other person employed by a school district whose employment requires certification and the exercise of discretion." *Id.* § 22.051(a). Thus, the Individual Defendants are entitled to summary judgment if they conclusively proved all essential elements of Tex. Educ. Code Section 22.051(a) as a matter of law: (1) that they were a professional employee; (2) that their actions were incident to or within the scope of their duties; and (3) that their duties involved the exercise of judgment or discretion on their part. *Enriquez v. Khouri*, 13 S.W.3d 458, 461 (Tex. App. 2000).

### 4. Immunity under the Paul D. Coverdell Teacher Protection Act of 2001

"The Paul D. Coverdell Teacher Protection Act of 2001 ("TPA") was enacted 'to provide teachers, principals, and other school professionals the tools they need to undertake reasonable actions to maintain order, discipline, and an appropriate educational environment.'" *Rodriguez v. Parker*, Civil Action No. 1:15-CV-181-P-BL, 2016 U.S. Dist. LEXIS 103470, at *24–25 (N.D. Tex. Apr. 27, 2016) (quoting 20 U.S.C. § 7942). To establish immunity, each Individual Defendant would need to demonstrate that:

> (1) [they were] acting within the scope of [their] employment or responsibilities to a school or governmental entity;

> (2) [their] actions . . . were carried out in conformity with Federal, State, and local laws (including rules and regulations) in furtherance of efforts to control, discipline, expel, or suspend a student or maintain order or control in the classroom or school;

> (3) . . . [they were] properly licensed, certified, or authorized by the appropriate authorities for the activities or practice involved in the State in which the harm

occurred, where the activities were or practice was undertaken within the scope of

[their] responsibilities;

(4) the harm was not caused by willful or criminal misconduct, gross negligence,

reckless misconduct, or a conscious, flagrant indifference to the rights or safety of

the individual harmed . . . ; and

(5) the harm was not caused by [them] operating a motor vehicle, vessel, aircraft,

or other vehicle . . . .

20 U.S.C. § 7946(a).

## III.    ANALYSIS

The motion covers four of the six causes of action in this suit (1) unreasonable seizure

and excessive use of force pursuant to 42 U.S.C. § 1983 against Crawley, Turner and Shuck

individually; (2) failure to train in a supervisory capacity pursuant to 42 U.S.C. § 1983 against

Crawley, individually and as an agent of CCISD; (3) failure to train pursuant to 42 U.S.C. § 1983

against CCISD; and, (4) Texas intentional tort of assault against Turner, Shuck, and Crawley

individually. They are addressed here in turn:

**A.  Individual Defendants: Unreasonable Seizure and/or the Excessive Use of Force**

Crawley, Shuck, and Turner hold qualified immunity against liability from claims of

unreasonable seizure and the excessive use of force. CCISD holds municipal immunity

**1.  Excessive Force**

For a claim of excessive use of force, Plaintiffs must prove that an injury occurred as a

direct result from the use of clearly unreasonable excessive force. *Elizondo*, 671 F.3d at 510.

"The determination of whether a plaintiff's alleged injury is sufficient to support an excessive

force claim is context-dependent and is 'directly related to the amount of force that is

constitutionally permissible under the circumstances.'" *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007) (quoting *Ikerd v. Blair*, 101 F.3d 430, 435 (5th Cir. 1996)). While only a *de minimis* injury needs to be proven, the Court is not convinced, based on prior case law, that this minor injury arises to even a *de minimis* standard. *See, e.g.,* S*iglar v. Hightower,* 112 F.3d 191, 193 (5th Cir. 1997) (bruised ear was de minimis and did not fulfill injury requirement); *Brown v. Rodriguez*, No. SA-15-CA-396-PM, 2016 U.S. Dist. LEXIS 49177, at *33 (W.D. Tex. Apr. 12, 2016) (two scratches without bleeding or swelling and unmedicated, unspecified pain was de minimis and did not satisfy injury requirement); *Brooks v. City of W. Point*, 639 F. App'x 986, 990 (5th Cir. 2016) (minor abrasions to hands and knees was de minimis and did not satisfy injury requirement); *Freeman*, 483 F.3d at 417 ("minor, incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest do not give rise to a constitutional claim for excessive force").

M.G. was sent to the school nurse at the conclusion of the restraints, where dry lips, pain to the left scapula, and old self-harm injuries were noted. Pls.' Resp. at 13. A follow-up with an orthopedist could not confirm nor rule out a fracture and the physician but did not require intervention. *Id.* There were minor psychological deteriorations noted, although these are difficult to separate from the diagnoses that M.G. already possessed. Reading the facts in a light most favorable to the Plaintiffs, the Court will agree that the shoulder injury was more than *de minimis.* However, the Plaintiffs have failed to establish that the use of force was clearly excessive or unreasonable. The injury is attributable to M.G. struggling against the restraint, not directly to the restraint itself. Pls.' Resp. at 13. The use of force was not clearly excessive or unreasonable when taken from the perspective of a reasonable officer on the scene. The school staff employed their SAMA training, a nationally recognized restraint training program, in

compliance with district policy. Defs.' Mot. at 8. Even if not conducted perfectly, the restraint cannot be deemed excessive as M.G.'s own father asked that the restraint be continued upon his arrival as he talked to his son. *Id* at 9. The Plaintiffs have, thus, failed to establish a Fourth Amendment violation for use of excessive force under 42 U.S.C. § 1983.

**2. Unreasonable Seizure**

A school official can violate the Fourth Amendment if the seizure was unreasonable under all relevant context and circumstances. *Hassan*, 55 F.3d at 1079. First, the Court asks whether the restraint was justified at its inception. *T.L.O.*, 469 U.S. at 341. A teacher may use a restraint as necessary to address an emergency as long as it is discontinued at the point which the emergency no longer exists, does not deprive the student of a basic human necessity, and is implemented in a way to protect the health and safety of the student and others. 19 Tex. Admin. Code § 89.1053(c). Emergency is defined as a situation where a "student's behavior posts a threat of: (A) imminent, serious physical harm[1] to the student or others; or (B) imminent, serious property destruction." 19 Tex. Admin. Code § 89.1053(b)(1). Notably, the Fourth Amendment does not preclude school officials from restraining a raging child. *Doe*, 149 F. Supp. 2d at 287.[2]

M.G. shoved a school administrator, was visibly angry, arguably attempted to elope, and was known to engage in self-harm. Defs.' Mot. at 7–9. Shuck, Crawley and Turner could have reasonably believed the first restraint was necessary to protect M.G. from physical harm. His

---

[1] The proposed definition of "serious bodily injury" proposed by Plaintiffs is based upon a statute governing the removal of a student to an alternative education setting for causing serious bodily injury. 71 Fed. Reg. 46383 (Aug. 14, 2006); 34 C.F.R. § 300.530(h)(i)(3). That is not a concern here as the child was only placed in a momentary restraint and was not removed to an alternative setting.

[2] Although Plaintiffs argue that *Doe* presents much more extreme childhood behavior, the response of the school is additionally much more extreme, but still found to be reasonable under the circumstances. *Doe*, 149 F. Supp. 2d at 287*;* Pls.' Resp. at 5. If it was not unreasonable to wrap a child in a blanket, duct-tape her to a cot, and place gauze bandages over her mouth after exhibiting behaviors of kicking, yelling, and head-butting, the Plaintiffs cannot here argue that, upon M.G. exhibiting similar behaviors, it was unreasonable to place him in a restraint nationally-recognized to be safe for children long enough for him to cease the behaviors. *Id.* at 279–80; Defs.' Mot. at 7–9.

resistance and escalation could have led Crawley, Shuck, and Turner to a reasonable belief that M.G. now posed an imminent, serious threat of physical harm to others. Knowledge of a child's special education status does not inherently make the use of restraint unreasonable. *See Bradyn S. v. Waxahachie Indep. Sch. Dist.*, 407 F. Supp. 3d 612, 627 (N.D. Tex. 2019) (school principal and local police placed an autistic child in a restraint with the assistance of the police without informing the police of the known disability). Therefore, M.G.'s behavior justified both the first and second restraint at inception.

Second, the Court must decide whether the restraint was reasonably related in scope to the circumstances. Although M.G. was quickly placed in the first restraint, the Individual Defendants attempted to release him when they believed he had calmed down from the first restraint. Only upon a re-escalation of behavior did they proceed to the second restraint. From the accounts provided, it is clear that they made an effort to comply with safe SAMA techniques and to ensure that M.G. was not restrained longer than necessary, nor in a way that would injure him or deprive him of basic human necessities. Even considering the unique vulnerabilities of school age children and the seriousness of the original infraction, the Individual Defendants' actions were not unreasonable. The Plaintiffs have, thus, failed to establish a Fourth Amendment violation for an unreasonable seizure under 42 U.S.C. § 1983.

**3.    Qualified Immunity**

The Individual Defendants are entitled to qualified immunity from the excessive force and unreasonable seizure claims brought against them under 42 U.S.C. § 1983. Qualified immunity was created to shield government officials from civil liability where the discretionary duties were performed in any way that was not plainly incompetent or knowingly violative of the constitution. *Hunter v. Bryant*, 502 U.S. 224, 229 (1991). To overcome immunity, the Plaintiffs

must (1) allege sufficient facts to make out a violation of a constitutional right and (2) establish that the right was clearly established at the time of the misconduct. *Collier*, 569 F.3d at 218–19. Firstly, the Court does not believe that the Plaintiffs have alleged sufficient facts to make out a violation of M.G.'s constitutional rights against the use of excessive force and unreasonable seizure. However, even if the Court did find the argument regarding the constitutional violation to be persuasive, the Court does not believe the right was so clearly established at the time of misconduct to override the Individual Defendants' grant of qualified immunity.

It is only when existing precedent places the constitutional question beyond debate that the Court should find qualified immunity to be waived. *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011). The Court, thus, asks "whether the law so clearly and unambiguously prohibited his conduct that 'every reasonable official would understand that what he is doing violates [the law].'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 739 (2011)). "If public officials or officers of 'reasonable competence could disagree [on whether the conduct is legal], immunity should be recognized.'" *Bradyn S.*, 407 F. Supp. 3d at 623 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). The Court does not find that this burden is met by the Plaintiffs who fail to lay out a single-case that questions the ability to use a restraint against a child in a school setting under similar circumstances, but also ignores the long history of the Court allowing such restraints or even more extreme variants of restraint. *See, e.g., id.* at 627 *(*autistic student pinned to ground and placed in handcuffs by principal and police after engaging in violence against other students); *Wilson v. City of Southlake*, Civil Action No. 4:16-cv-00057-O, 2017 U.S. Dist. LEXIS 227020, at *31 (N.D. Tex. Nov. 28, 2017) (eight-year-old autistic student handcuffed and forced into a chair after claiming to have a weapon used to harm animals and bugs and throwing coffee at administrator); *Campbell v. McAlister*, No. 97-20675, 1998 U.S. App. LEXIS 39300, at

*13 (5th Cir. Oct. 20, 1998) (officer slams a five-year-old to the floor and drags him to the principal's office, but no physical injuries present at the conclusion and the child was being belligerent and refusing to obey teacher's instructions); *Brown v. Coulston*, No. 4:19-CV-168-SDJ, 2020 U.S. Dist. LEXIS 94734, at *19 (E.D. Tex. May 29, 2020) (ten-year-old student who committed minor infractions and refused to leave the classroom carried out of room by police officer who then proceeded to hold child down on his stomach and handcuff him); *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 876 (5th Cir. 2000) (fourteen-year-old forced to do one-hundred squats for speaking in class then suffers severe health implications from the strain on his body); *Doe*, 149 F. Supp. 2d at 302 (first-grader wrapped in blanket and taped as a restraint after "raging").

This Court is, additionally, bound by the precedent set in *Fee v. Herndon*, 900 F.2d 804 (5th Cir. 1990), which allows a school administrator significant leeway in punishing a student because "Texas has civil and criminal laws in place to proscribe educators from abusing their charges, and further provides adequate post-punishment relief in favor of students." *Id.* at 810. The Fifth Circuit reasoned they found "no constitutional warrant to usurp classroom discipline where states, like Texas, have taken affirmative steps to protect their students from overzealous disciplinarians." *Id.* at 809. The Fifth Circuit "does not permit public school students to bring claims for excessive corporal punishment as substantive due process violations under 42 U.S.C. § 1983 if the State provides an adequate remedy[.]" *Flores*, 116 F. App'x at 511. In considering both the abundance of cases where students have been restrained in similar fashions without a finding of excessive force and the *Fee* precedent, this Court cannot find that the actions of the Individual Defendants shocked the conscious or was unambiguously disallowed. Therefore, the

claims brought against the Individual Defendants under 42 U.S.C. § 1983 are barred by qualified immunity.

**B.  Crawley's Failure to Train in a Supervisory Capacity**

As the Plaintiffs have failed to allege sufficient facts to support a violation of M.G.'s Fourth Amendment Rights against excessive force and unreasonable seizure, Crawley cannot be held responsible for a failure to train staff in a supervisory capacity. In order to succeed on a failure to train claim against Defendant Crawley, the Plaintiffs must establish that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Goodman*, 571 F.3d at 395. The Court finds the Plaintiffs' argument that Crawley failed to supervise and train the officials involved sufficient, as Turner was not TBSI trained at the time of the incident, nor was he trained within 30 days of the incident, as required by state law. Pls.' Resp. at 19. However, the Court notes that all the involved actors were extensively trained in de-escalation, crisis management, containment, and behavioral intervention over the course of their careers as educators.

Next, the Plaintiffs must show the causal connection between the failure and the violation of the constitutional right. Here, the Court does not find a violation of the constitutional right, so the failure to train argument fails. Assuming there was a constitutional violation found, the Court does not believe that Crawley was deliberately indifferent to the need for training. The Plaintiffs have failed to plead with any specificity how the training program adopted was insufficient, nor did they plead facts of repeat incidents that would put Crawley on notice of the need to revise training policies. Additionally, Crawley is not charged with establishing the training policy, only

implementing it. Tex. Educ. Code §§ 21.451(b)–(d), (g). There were no facts alleged by Plaintiffs that prior incidents had put Crawley on notice of the lapsed training.

Based on the facts plead by Plaintiffs, Crawley cannot be held liable for a failure to train. Additionally, the Court believes that sufficient precedent exists to allow for restraint of a schoolchild irrespective of training and district policy. Therefore, Crawley is entitled to qualified immunity for the performance of her discretionary actions as the consequences of the lapse of training do not shock the conscious.

## C.  Failure to Train Claim Against CCISD

The Court acknowledges that two theories of municipal liability are pled within the briefs presented, despite only a failure to train theory being presented within the complaint. The Court will address both, in turn, as they both fail under the facts pled.

Within the complaint and throughout the briefings for this motion, Plaintiffs and Defendants argue a municipal liability theory predicated on a failure to train. In order to succeed on a failure to train theory against a municipality, Plaintiffs must plead sufficient facts to show that the municipality had a policy of inadequate training which resulted in constitutional violations that amounted to deliberate indifference, as evidenced through a pattern of violations or which the Board had constructive knowledge of. The Court does not believe this burden to be met by the Plaintiffs when the facts are read in a way most favorable to the Plaintiffs. Firstly, the district did not appear to have a policy of inadequate training, as they required teachers to complete the training required by state law of educators in their position.

The Plaintiffs also fail to show a pattern of violations showing that the training is obviously inadequate; they, at most, establish that an injury could have been avoided with better training, which is not enough. *Yara*, 560 F. App'x at 360; *Connick*, 536 U.S. at 68. Mere

conclusory statements cannot fulfill Plaintiffs' obligation show a pattern of violations or prove that training is so obviously inadequate that it is likely to result in a constitutional violation. *Spiller*, 130 F.3d at 167; *Yara*, 560 F. App'x at 360. Without sufficient facts to show a pattern of violations, the Court does not believe that the Board of Trustees had actual or constructive knowledge of ongoing violations, as necessary under a failure to train claim. *Yara*, 560 F. App'x at 360.

In the briefings for this motion, Plaintiffs and Defendants argue a municipal liability theory whereby M.G.'s "rights were violated through the execution of an official policy by [CCISD]." *Eugene*, 65 F.3d at 1304. First, the Court must establish whether there was an official policy, custom, or practice by CCISD to use excessive force or to unreasonably seize students. Under the Tex. Educ. Code §§ 11.051, 11.151, an official policy is only that executed by the Board of Trustees. *Jett*, 7 F.3d at 1245.[3] The Court does not find a policy, custom or practice of excessive force or unreasonable seizure by the CCISD Board of Trustees. The district policy for the use of restraint states:

> Within the scope of an employee's duties, a District employee may physically restrain a student if the employee reasonably believes restraint is necessary in order to:
>
> 1. Protect a person, including the person using physical restraint, from physical injury.
>
> 2. Obtain possession of a weapon or other dangerous object.

---

[3] The Plaintiffs contend that local policy executed by the Board of Trustees allowed for restraints where the Texas Code did not, rendering the local policy facially unconstitutional or, at the very least, dangerous. However, the Fifth Circuit has previously dismissed arguments that a violation of state code rises to a constitutional crisis. *Murray v. Miss. Dep't of Corr.*, 911 F.2d 1167, 1168 (5th Cir. 1990).

3. Remove a student refusing a lawful command of a school employee from a specific location, including a classroom or other school property, in order to restore order or to impose disciplinary measures.

4. Control an irrational student.

5. Protect property from serious damage.

Defs.' Ex. A-4, ECF # 25-6. Under Texas law, "[a] school employee, volunteer, or independent contractor may use restraint only in an emergency as defined in subsection (b) of this section and with the following limitations." 19 Tex. Admin. Code § 89.1053(c). An emergency is defined as "a situation in which a student's behavior poses a threat of: (A) imminent, serious physical harm to the student or others; or (B) imminent, serious property destruction." *Id.* § 89.1053(b)(1). The Court does not believe the difference in these policies is substantial or consequential, nor does either policy employ a mechanism which would allow for unreasonable or excessive force or seizure within the school setting. This is supported by years of precedent allowing the use of restraints within the schools. *Fee*, 900 F.2d at 809; *Flores*, 116 F. App'x at 511; *see also, e.g.,* B*radyn S.,* 407 F. Supp. 3d at 623 (autistic student pinned to ground and placed in handcuffs by principal and police after engaging in violence against other students); *Doe*, 149 F. Supp. 2d at 302 (first-grader wrapped in blanket and taped as a restraint after "raging").

If such a policy is found, the Plaintiffs must then demonstrate that the policy was the moving force behind the injury. Should the policy be improper, it would have been the moving force behind the injury, but the policy here was not improper. There was no "decision by the [entity] itself to violate the constitution." *Gonzalez*, 996 F.2d at 759. Nor have the Plaintiffs established a pattern of misconduct or similar acts by pointing "to factual allegations sufficient to allow a reasonable inference that there was a pattern of misconduct involving similar acts."

*Humble Indep. Sch. Dist.*, 25 F. Supp. 3d at 1001 (citing *Zarnow*, 614 F.3d at 169). The Plaintiffs have also not established that the Board acted with deliberate indifference, which would require the Plaintiffs to prove the Board of Trustees disregarded a known or obvious consequence of their actions, especially to a standard above gross negligence. *Yara*, 560 F. App'x at 360.

For these reasons, the Court finds that the 42 U.S.C. § 1983 claims against CCISD are barred by municipal immunity.

**D.  Texas Intentional Tort – Assault**

The Texas Intentional Tort of Assault claims against Crawley, Turner, and Shuck are barred by immunity. The Court believes that official or statutory immunity alone prevents these claims but addresses all three claims of immunity in turn.

Crawley, Shuck, and Turner have immunity as public officials as long as they were performing discretionary duties in good faith within the scope of their authority. *Ballantyne*, 144 S.W.3d at 422. It is within the scope of educators, especially principals and counselors, to address discipline and behavioral incidents of students. The standard of good faith is an objective standard and requires an elevated standard of proof to defeat. *Chambers*, 883 S.W.2d at 653. The Plaintiffs do not allege facts that provide evidence of a lack of good faith on the part of the Individual Defendants. District policy allows for the use of restraints when necessary and it is within the duties of Turner, Shuck, and Crawley to enforce district policy. The Plaintiffs do not allege facts stating that the Individual Defendants did not follow district policy. Therefore, Turner Shuck and Crawley hold official immunity over the assault claims.

The assault claims against Turner, Shuck, and Crawley are barred by the statutory immunity provided under TEX. EDUC. CODE § 22.0511. It is undisputed that Turner, Shuck and Crawley are professional employees of a school and that these actions were within the scope of

their duties. The restraint performed was an act of discretion under their duties. *Doe*, 149 F. Supp 2d at 298. Therefore, Turner, Shuck, and Crawley have statutory immunity barring the assault claims against them.

The facts are not settled as to whether Turner, Shuck and Crawley are entitled to immunity under 20 U.S.C. § 7942 (the Paul D. Coverdell Teacher Protection Act of 2001). It is undisputed that Turner, Shuck and Crawley are professional employees acting within their scope of employment and that the harm was not caused by the operation of a motor vehicle. This Court finds that the actions carried out were in conformity with the law and were used properly to control M.G. and maintain order. The Court does not believe harm was caused willfully, through criminal, reckless, or gross misconduct, or in a way that was flagrantly indifferent to the rights and safety of the child. However, the status of the SAMA licensure is in dispute and the Court, thus, finds that the Defendants are not entitled to immunity under 20 U.S.C. § 7942 when looking at the facts pled by Plaintiffs and Defendants.

The Court finds that the state assault claims against Crawley, Turner, and Shuck are barred by statutory and/or official immunity.

It is therefore **ORDERED** that the Individual Defendants' motion for summary judgment and CCISD's motion for partial summary judgment is **GRANTED**.

**SIGNED** this 9th day of December, 2020.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE