**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **ASHLEY G. AND RICHARD G. AS** | § | |
| **PARENTS/GUARDIANS/NEXT OF** | § | |
| **FRIENDS OF M.G., A MINOR** | § | |
| **WITH A DISABILITY** | § | |
| *Plaintiffs*, | § | |
| | § | |
| **v.** | § | |
| | § | **CASE NO. 6:19-CV-00420-ADA-JCM** |
| **COPPERAS COVE INDEPENDENT** | § | |
| **SCHOOL DISTRICT, AMANDA** | § | |
| **CRAWLEY, in her individual** | § | |
| **capacity, ROBERT TURNER, in his** | § | |
| **individual capacity, AND REBEKAH** | § | |
| **SHUCK, in her individual capacity.** | § | |
| *Defendants*. | § | |

## ORDER GRANTING CCISD'S MOTION AND DENYING M.G.'S MOTION FOR SUMMARY JUDGMENT

Came for consideration the Motion for Judgment of Idea Claims on the Administrative Record and Motion for Partial Summary Judgment of Section 504/ADA claims filed by Ashley G. and Richard G. as Parents/Guardians/Next of Friends of M.G., a minor individual with a disability ("Plaintiffs"), Pls.' Mot. J. A.R. & Part. Summ. J., ECF No. 40, and Motion for Judgment on the Administrative Record and Motion for Summary Judgment filed by Copperas Cove Independent School District ("CCISD" or "the District" or "Defendants"). Def.'s Mot. J. A.R. & Summ. J., ECF No. 41. For the following reasons, the Court **DENIES** the Plaintiffs' Motion for Judgment on the Administrative Record and Partial Summary Judgment and **GRANTS** the Defendants' Motion for Judgment on the Administrative Record and Summary Judgment.

# I. BACKGROUND

## A. Factual Background

M.G. was a student in the CCISD school district at the time of the alleged offenses at issue in this case. Administrative Record 25–31. During his elementary school years, M.G. had an unsuccessful participation in Response to Intervention, AR 1101, poor and failing state standardized testing results in the 3rd and 4th grade, AR 1207, failed CCISD assessment, AR 736–37, 1203, had a reading fluency level far below grade level according to his reading assessments, AF 22, and had multiple behavioral referrals and visits to the guidance counselor. AR 788–90. M.G. "met standards" in his STAAR assessment his fifth-grade year (2015-2016) and passed all his class. AR 743, 1207. M.G. was also reading at a "middle-of-sixth-grade" level his fifth-grade year. AR 2569:16–21. His sixth-grade year (2016-2017), M.G. again passed his STAAR assessment, AR 1099, however, his scores had dropped to "only approaching standards." Pls.' Mot. at 6 (citing Appendix of Facts ("AF") 44). M.G. passed all his classes during the 2016-2017 school year. AR 1207. In January 2017, M.G.'s parent sent CCISD notifying that M.G. was diagnosed with and was taking medication for ADHD and requesting an evaluation for Section 504 services. AR 806. CCISD characterized M.G. as a child with a disability under Section 504 of the Rehabilitation Act and implemented several accommodations to address the issue. AR 803, 1976. M.G.'s parents withdrew him from CCISD and enrolled him in virtual public charter school for his seventh-grade year. AR 2183–84.

M.G's parents re-enrolled him in CCISD for his eighth-grade year. AR 1207. M.G.'s parents informed CCISD that M.G. had failed all of his seventh-grade classes and all portions of the STAAR assessment test. AR 1207, 2051, 2220. His parents also notified CCISD that M.G. was therapeutically hospitalized two times during Spring 2018. AR 834, 836–37. M.G.'s parents did

not provide CCISD with school records from the virtual public charter school, records of M.G.'s failing STAAR scores from that year, or hospital records of M.G.'s hospitalizations from that year. AR 2223:6–10, 2556:4–2557:22, 2559:19–23. CCISD re-implemented M.G.'s 504 plan from March 2017. AR 0916–17. M.G.'s parent notified CCISD that M.G.'s doctor diagnosed him with Bi-Polar Disorder, Autism, Anxiety, and Depression. AR 826. CCISD classified M.G. as a child with a disability under Section 504 due to Autism Spectrum Disorder ("ASD"), Oppositional Defiant Disorder ("ODD"), and depression. *Id.* By September, M.G. was failing his eighth-grade science class, but brought his grade up to passing. *Id.* CCISD held a 504 meeting that September where teachers and M.G.'s parents discussed M.G.'s academic and behavioral challenges, M.G.'s recent therapeutic hospitalizations, and M.G.'s ongoing therapy appointments. *Id.* AF 55-57. The September 504 plan gave M.G. the right to leave a situation for a "cool-off" period when he became agitated along with small group administration, reminders to stay on task, and preferential seating. AR 826.

Prior to the events that occurred on October 30, 2018, M.G. performed grade-level work and had passing scores in all but one of his classes. AR 749. On October 9, 2018, M.G. received one disciplinary referral for running down a hallway. AR 786, 2053:11–15. On October 17th, M.G. received another disciplinary report for horseplay. AR 1725:5–12. On October 30, 2018, M.G. received another disciplinary referral resulting in M.G being restrained multiple times by CCISD staff while he was trying to use his 504 cooling off period. AF 70-182. These restraints resulted in M.G. being physically injured on October 30, 2018. AF 183–86. Afterwards, M.G.'s negative behaviors increased, and his academics declined. AF 180, 187. CCISD administrators filed felony charges against M.G. as a disciplinary strategy for M.G.'s behavior during the restraint on October 30, 2018. AF 127-31; 174–77. CCISD notified M.G.'s parent that, as soon as the District received

the police report relating to the charges, M.G. would be placed in a disciplinary alternative educational placement ("DAEP"). AF 188. On November 1, 2018, M.G.'s parent requested CCISD conduct an expedited education evaluation of M.G. AF 189.

In November 2018, CCISD's faculty and M.G.'s parents had another 504 meeting. AF 193-205. CCISD, again, recognized M.G. as a child with a disability under Section 504. AR 826. After the November 504 plan was implemented, M.G. failed his first semester final exams in History, English, and Science. AR 2416–19; AF 218-20. M.G.'s parents allege that his negative behavior and anxiety continued to escalate, resulting in M.G. leaving the school campus in January 2019, an increase in M.G.'s medication, and M.G.'s inability to return to CCISD. Pls.' Mot. at 9–10 (citing AF 224-28; AF 09; AF 229-45).

CCISD agreed to conduct a Full Individual Evaluation ("FIE") on November 29, 2017. AR 893. The CCISD reached out to M.G.'s parents on November 29, December 3, December 4, December 5, and December 6 requesting their consent for the evaluation. AR 897–98. M.G.'s parent requested multiple times that the documents be emailed to her, stating that she could not come to the school to sign the consent forms. AF 210-16. CCISD refused to email M.G.'s parent the documents. Pls.' Mot. at 12 (citing AF 405). CCISD offered to send someone to M.G.'s home, but M.G.'s parent stated that she did not feel comfortable with that and refused. AR 2196:4–8.

On December 18, 2018, CCISD provided M.G.'s parents with the consent forms at the mandatory resolution session required by the Individuals with Disabilities Education Act ("IDEA"). AR 915. M.G.'s parents did not provide CCISD with a fully completed consent form until January 4, 2019, during which time the District was on Winter Break. AR 1289. CCISD began to conduct the FIE on January 8, 2019 when Winter Break ended. AR 2351:16–24. CCISD also conducted an occupational therapy ("OT") screener from the Internet along with the FIE. AR

1251, 1260–62. The FIE determined that M.G. has a specific learning disability ("SLD") for Reading Comprehension–a qualifying disability making M.G. eligible for special education services. AR 1162. Licensed Specialist in School Psychology ("LSSP") CCISD also agreed to conduct an assistive technology ("AT") assessment for M.G. but failed to do so. AR 904, 1275. M.G. withdrew from CCISD on February 5, 2019 and placed him in Oak Creek Academy which delayed the testing. AR 917, 1086, 1355, 1289–93, 1335–37. CCISD completed its evaluation on April 4, 2019. *Id.*; AR 1251. On March 30, 2019, Dr. Lesli Doan, the Plaintiffs' expert, completed a Psychoeducation Evaluation of M.G., diagnosing him with a Specific Learning Disability ("SLD") in Reading Comprehension, Written Expression, and Reading Fluency. AR 1161, 1142–43.

### B. SEHO Due Process Hearing

M.G.'s parent filed a Request for Special Education Due Process Hearing on December 4, 2018. AR 22–38. A special education hearing officer ("SEHO") heard the Plaintiff's due process claims to determine whether CCISD failed to identify and provide a timely and comprehensive evaluation of M.G. for special education and related services, thereby failing to meet its Child Find responsibility under the IDEA. AR 3. The SEHO found that CCISD's delay in providing consent until December 18, 2018 was reasonable because the record contained insufficient evidence to trigger CCISD's Child find duty prior to parental request and any delay in CCISD proceeding with the evaluation was attributable to M.G.'s parents' hesitation to sign the consent documents. AR 12. The SEHO also found that the FIE showed that M.G., upon a physician's medical diagnosis, would likely meet criteria as a student with Other Health Impairment ("OHI") for ADHD. AR 9. The SEHO found that the FIE showed that M.G. met eligibility criteria for an SLD in Reading Comprehension. *Id.*

### C. Procedural Background

Plaintiffs brought this suit in federal court, appealing the SEHO's decision in the special education due process hearing, *Micheal G., b/n/f/ Ashley and Richard G. v. Copperas Cove Independent School District*, Dkt. No. 096-SE-1218, and alleging claims under Section 504 of the Rehabilitation Act ("Section 504") and the Americans with Disabilities Act. ("ADA"). Pls.' Compl. ECF No. 1. On December 9, 2020, this Court entered an Order granting summary judgment for the individual defendants in his case and granting partial summary judgment for CCISD– dismissing plaintiffs' claim for failure to train pursuant to 42 U.S.C. § 1983 against CCISD. Order Granting Mot. for Summ. J. ECF No. 48.

On August 2, 2020, Plaintiffs filed a Motion for Partial Summary Judgment and Judgment on the Administrative Record, Pls.' Mot., and Defendants filed a Motion for Judgment on the Administrative Record and Motion for Summary Judgement, Def.'s Mot.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 56(a)

"Summary judgment is required when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (quoting Fed. R. Civ. P. 56(a)). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nola Spice Designs, L.L.C. v. Haydel Enters.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *Id.* (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014));

*see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "When parties file cross-motions for summary judgment, we review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *A.A. v. Northside Indep. Sch. Dist.*, 951 F.3d 678, 684 (5th Cir. 2020) (citing *Cooley v. Hous. Auth of Slidell*, 747 F.3d 295, 298 (5th Cir. 2014)).

"Where the non-movant bears the burden of proof at trial, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Celotex Corp.*, 477 U.S. at 323, 325 (quotation marks omitted). The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact but does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

"Once the moving party [meets her or his initial burden], the non-moving party must 'go beyond the pleadings and by her [or his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Nola Spice*, 783 F.3d at 536 (quoting *LHC Grp., Inc.*, 773 F.3d at 694). The nonmovant must identify and articulate how specific evidence in the record supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied

by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008); *see also Nola Spice*, 783 F.3d at 536.

### a. Americans with Disabilities Act

"The ADA is a federal anti-discrimination statute designed '[t]o provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'" *Delano-Pyle v. Victoria Cty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002) (quoting *Rizzo v. Children's World Learning Ctrs., Inc.*, 173 F.3d 254, 261 (5th Cir. 1999). Title II of the ADA focuses on disability discrimination in the provision of public services. 42 U.S.C. § 12132.  To establish a violation under the ADA, Plaintiff must prove that (1) he or she is a qualified individual under the ADA; (2) he or she was excluded from participation in, denied benefits of services, programs, or activities for which the public entity is responsible, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was because of his or her disability. *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004); *I.A. v. Seguin Indep. Sch. Dist.*, 881 F. Supp. 2d 770, 776 (W.D. Tex. 2012). A plaintiff must also prove that the discrimination was intentional in order to recover damages. *Delano–Pyle*, 302 F.3d 567, 574 (5th Cir. 2002).

### b. Section 504 of the Rehabilitation Act

The Rehabilitation Act § 504 forbids recipients of federal funding from discriminating against people with disabilities. 29 U.S.C § 794(b)(2)(B); *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011). Congress enacted the Rehabilitation Act "to ensure that handicapped

individuals are not denied jobs or other benefits because of prejudiced attitudes or ignorance of others." *Brennan v. Stewart*, 834 F.2d 1248, 1259 (5th Cir. 1988). FAPE under § 504 requires school districts to provide education or related services designed to meet the needs of students with disabilities as adequately as the district meets the needs of students without disabilities. 34 C.F.R. § 104.33(b). A public school violates § 504 if it denies a qualified individual with a disability a reasonable accommodation that the individual needs to enjoy meaningful access to the benefits of public services. *See Alexander v. Choate*, 469 U.S. 287, 301–02 & n.21 (1985). To recover damages under § 504 of the Rehabilitation Act, a plaintiff mut show that the defendants' discriminatory actions were "solely by reason of" the plaintiff's disability. 29 U.S.C. § 794; *see D.A. ex rel. Latasha A. v. Hous. Indep. Sch. Dist.*, 629 F.3d 450, 453 (5th Cir. 2010).

"The plaintiff must link the discrimination claims to some evidence of prejudice, ill-will, or spite," or, at the least, show deliberate indifference. *A.N. v. Mart Indep. Sch. Dist.*, No. W-13-CV-002, 2013 WL 11762157, at *6 (W.D. Tex. Dec. 23, 2013), *aff'd sub nom. Nevills v. Mart Indep. Sch. Dist.*, 608 F. App'x 217 (5th Cir. 2015); *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 263 (3rd Cir. 2013) (the Fifth Circuit requires a "higher showing of intentional discrimination than deliberate indifference, such as discriminatory animus"); *Washington ex rel. J.W. v. Katy Indep. Sch. Dist.*, 403 F. Supp. 3d 610, 622 (S.D. Tex. 2019). Unless district officials "depart grossly from accepted standards among educational professionals," courts will not substitute their own judgment for the educational decisions made by the district. *D.A.*, 629 F.3d at 454–455.

### B. Individual with Disabilities Act

The purpose of the IDEA is to ensure children with disabilities receive a "free appropriate public education (FAPE) that emphasizes special education and related services designed to meet

their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). All school districts within Texas must comply with the IDEA. *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.,* 118 F.3d 245, 247 (5th Cir. 1997). The IDEA requires states to educate children with disabilities "in the least restrictive environment consistent with [the child's] needs . . ." *Teague Indep. Sch. Dist. v. Todd L.,* 999 F.2d 127, 128 (5th Cir. 1993). The IDEA does not require the school district to provide the best possible free appropriate public education ("FAPE"), "nor one that will maximize the child's educational potential." *Michael F.,* 118 F.3d at 247. Instead, the "FAPE must be tailored to each disabled child's needs through an 'individualized education program [("IEP")],' which is a written statement prepared [by a committee consisting of] a 'qualified' and 'knowledgeable' school district representative, a teacher, the child's parents or guardians, and, when appropriate, the child himself." *El Paso Indep. Sch. Dist. v. Richard R.,* 567 F. Supp. 2d 918, 925 (W.D. Tex. 2008) (citing 20 U.S.C. § 1414(d)(1)(B)). In Texas, the committee responsible for preparing a student's IEP is the ARD committee.

Under the IDEA, any party aggrieved by the SEHO's findings and decision may bring suit in district court. 20 U.S.C. § 1415(i)(2)(A). "Under the IDEA, a federal district court's review of a [SEHO's] decision is 'virtually *de novo.*'" *Adam F. ex rel. Robert J. v. Keller Indep. Sch. Dist.*, 328 F.3d 804, 808 (5th Cir. 2003). The court should afford the SEHO's findings "'due weight,' but the district court must arrive at an independent conclusion based on a preponderance of the evidence." *Id.* As a result, even though the court is ruling on summary judgment, the existence of a disputed material fact will not defeat a summary judgment motion. *Reyes v. Manor Indep. Sch. Dist.*, No. A-14-CA-00469, 2016 WL 439148, at *4 (W.D. Tex. Feb. 2, 2016).

The IDEA presumes a school district's IEP is appropriate. *White ex rel. White v. Acension Parish Sch. Bd.*, 343 F.3d 373, 377 (5th Cir. 2003). The party challenging the IEP bears the burden of showing the IEP was inappropriate under the IDEA. *Richardson Indep. Sch. Dist. v. Michael Z.*, 580 F.3d 286, 292 n.4 (5th Cir. 2009). A district court should not substitute its "own notions of sound educational policy for those of the school authorities which [it] review[s]." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 206 (1982). To that end, a district court's task is to determine whether a school district complied with the IDEA and not to second guess their educational decision making. *R.H. v. Plano Indep. Sch. Dist.*, 607 F.3d 1003, 1010 (5th Cir. 2010).

In an IDEA case, a motion for judgment on the record is a request for the judge to act as a fact finder and enter a final judgment on a stipulated record. Individuals with Disabilities Act § 635; 20 U.S.C. § 1415(i)(2)(C).

## III. ANALYSIS

When reviewing a SEHO's decisions, district courts make two determinations. First, courts determine whether the school district complied with the IDEA's procedural requirements. *Rowley*, 458 U.S. at 177Second, the court will determine whether a student's IEP is reasonably calculated to provide meaningful educational benefits. *Id*. This Court considers the appropriate statute of limitations, procedural violation claims, and ADA and § 504 claims in turn.

### A.  Statute of Limitations

The IDEA's statute of limitations requires a parent or agency to request a due process hearing within 2 years of the date the parent or agency should have known about the alleged action that forms the basis of the complaint unless the State has a different time limitation for such a request. 20 U.S.C. § 1415(f)(3)(C). Texas has a one-year statute of limitations for matters to be

considered at Special Education Due Process Hearings. 19 TEX. ADMIN. CODE § 89.1151(c). The one-year statute of limitations is triggered when the parent knew or should have known about the alleged action that forms the basis of the complaint. *Id.*

There are two federally enacted exceptions to this one-year statute of limitations. 20 U.S.C. § 415(f)(3)(D). The statute of limitations does not apply to a parent if the parent was prevented from filing a due process complaint due to 1) specific misrepresentations by the district that it had resolved the problem forming the basis of the due process complaint; or 2) the district's withholding of information from the parent that was required to be provided to the parent under the IDEA. 34 C.F.R. § 300.511(f). To qualify under the first exception, the alleged misrepresentation must be "intentional or flagrant rather than merely a repetition of an aspect of the FAPE determination." *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 245 (3rd Cir. 2012) (finding that such a high bar should apply otherwise "[m]ere optimism in reports of student's progress" and teachers who recommend "behavioral programs or instructional steps short of formal special education might invoke the exception"); *see Spring Branch Indep. Sch. Dist. v. O.W. by Hannah W.*, 961 F.3d 781, 794 (5th Cir. 2020) (citing to *D.K.*, 696 F.3d 233). The plaintiff must show that the school "intentionally misled them or knowingly deceived them regarding their child's progress." *Id.* at 246. The second exception only applies to statutorily mandated disclosures such as a copy of procedural safeguards required by the IDEA. *Richard R.*, 567 F. Supp. 2d at 943. The rationale for this exception is that "a local education agency's withholding of procedural safeguards would act to prevent parents from requesting a due process hearing . . . until such a time as an intervening source apprised them of their rights." *Id.* at 945.

Plaintiffs requested a due process hearing on December 4, 2018. AR 10. Thus, the SEHO found that Plaintiffs' claims concerning procedural violations, including child-find, of the IDEA

before December 4, 2017 are time-barred under Texas' one-year statute of limitations. *Id.*; 19 TEX. ADMIN. CODE § 89.1151(c); *Marc V. v. North East I.S.D.*, 455 F. Supp. 2d 577, 591 (W.D. Tex. 2006).

Plaintiffs allege that SEHO erred in finding that the statute of limitations was not tolled. Pls.' Mot. at 6. Plaintiffs allege that the letter they sent CCISD in January 2017 informing CCISD of M.G.'s ADHD diagnosis and request for educational assistance was an implied request for evaluation. *Id.* at 7. (citing *Robertson Cty. Sch. Sys. v. King*, No. 95-5526, 1996 WL 593605, *4 (6th Cir. Oct. 15, 1996)). Plaintiffs argue the statute of limitations should be tolled because CCISD failed to provide M.G.'s parents with notice/consent to evaluate and failed to provide the IDEA notice of procedural safeguards despite Parent's January 2017 letter. *Id.* (citing *Indep. Sch. Dist. No. 283 v. E.M.D.H.*, 357 F. Supp. 3d 876, 889 (D. Minn. 2019); *D.G. v. Somerset Hills Sch. Dist.*, 559 F. Supp. 2d 484, 492 (D.N.J. 2008)). However, expressions of concern about academic performance and requests for school assistance alone do not trigger the IDEA's child find duty. *Oliver v. Dallas Indep. Sch. Dist.*, No. Civ. A. 3:01-CV-2627 2004 WL 1800878, * 3 (N.D. Tex. Aug. 11, 2004).

After the parent's request for assistance on January 2017, CCISD held a 504 meeting and implemented the March 504 plan. AR 805. This Court agrees with the SEHO findings that CCISD did not intentionally misled of knowingly deceive M.G.'s parents to believe that M.G. did not have any protections under IDEA, nor did the district represent to M.G.'s parents that the current 504 solved M.G.'s behavioral challenges. To the contrary, CCISD continued to hold 504 meetings with M.G.'s parents and teachers and come up with continuing solutions to improve M.G.'s education. AR 821. CCISD's attempt to resolve M.G.'s behavioral and learning issues under section 504 cannot be construed as an affirmative statement to M.G.'s parents that M.G. had no rights under

the IDEA. AR 10. Furthermore, this Court agrees with the SEHO finding that the District did not withhold information that it was statutorily required to provide. AR 10. The January 2017 letter specifically requested a section 504 evaluation. AR 6. Such a direct request was clearly not an implied request for an IDEA evaluation. Thus, CCISD was not required to disclose the IDEA procedural safeguards after receiving the letter. For the foregoing reasons, this Court finds that neither statutory exception applies, and the statute of limitations bars any claims that accrued before December 4, 2017.

## B.  Procedural Violations

The existence of a procedural violation does not automatically entitle a plaintiff to relief. *Adam J. ex rel. Robert J. v. Keller Indep. Sch. Dist.*, 328 F.3d 804, 811–12 (5th Cir. 2003). A plaintiff must also show substantive harm precipitating from the procedural violation. *Id.* Under the IDEA, a plaintiff must show that the procedural violation (i) impeded the child's right to a FAPE; (ii) significantly impeded the parents' opportunity to participate in the decision-making process regarding the provision of a FAPE; or (iii) caused a deprivation of educational benefits. 20 U.S.C. § 1415(f)(3)(E)(ii). This Court finds that CCISD did not violate the IDEA because (1) CCISD met its Child Find Obligation; (2) CCISD's failure to determine M.G.'s eligibility did not deny him a FAPE; (3) CCISD's denial of an IEP did not deny M.G. a FAPE. As such, Plaintiffs are not entitled to reimbursement for Oak Creek Academy.

### i.    *CCISD met with its Child Find obligations.*

Plaintiff first alleges that the SEHO erred in finding that Defendant complied with its "child find" duty. Pls.' Mot. at 10. The "child find" provision of the IDEA requires states to identify and locate all children with disabilities who may need special education and related services. 20 U.S.C. § 1412(3)(A). This includes children who are suspected of having disabilities, "even though they

are advancing grade to grade." 34 C.F.R. § 300.111(a). The IDEA's Child Find duty "is triggered when the local educational agency has reason to suspect a disability coupled with reason to suspect that special education services may be needed to address that disability." *Richard R.*, 567 F. Supp. 2d at 950; *D.G. v. Flour Bluff Indep. Sch. Dist.*, 481 Fed. App'x 887, 891–94 (5th Cir. 2012). Determining whether a child find violation occurred is a fact-intensive inquiry and "§ 504 accommodations are not a substitute for an evaluation once a school district is 'on notice of acts or behavior likely to indicate a disability.'" *Spring Branch*, 961 F.3d at 794 (citing *Krawitz by Parker v. Galveston Indep. Sch. Dist.*, 900 F.3d 673, 676 (5th Cir. 2018)).

To determine whether a district complied with their "child find" duty, courts use a two-part inquiry. *Richard R.*, 567 F. Supp. 2d at 950. First, courts determine whether the school district had reason to suspect that a child may have a disability. *Id.* If so, courts determine whether the local education agency evaluated the student within a reasonable amount of time. *Id.* As mentioned above, Plaintiffs' claims before December 4, 2017, are time-barred by the statute of limitations. The relevant period for analysis is from December 4, 2017 to February 22, 2019, the date on which Plaintiffs filed an Amended Complaint with the SEHO. AR 10; *see T.C. v. Lewisville I.S.D.,* No. 4:13-cv-186, 2016 WL 705930 at *11 (E.D. Tex. 2016) (explaining that, because of the statute of limitations, analysis about whether a school district complied with its child find obligations is limited to the year before the request of the due process hearing).

CCISD did not violate its Child Find Obligations because it did not have reason to suspect M.G. needed special education services to address a disability prior to November 1, 2018; CCISD's delay in providing consent for the evaluation was reasonable; CCISD timely conduced the FIE; and the FIE findings were appropriate.

   a. **The school district did not have reason to suspect M.G. had a disability prior to November 1, 2018.**

Under the IDEA, a school district is deemed to have knowledge that a student may have a disability when "i) the parent of the child has expressed concern in writing to supervisory or administrative personnel of the appropriate educational agency, or a teacher of the child, that the child is in need of special education and related services; ii) the parent of the child has requested an evaluation of the child pursuant to section 1414(a)(1)(B) of this title; or iii) the teacher of the child, or other personnel of the local educational agency, has expressed specific concerns about a pattern of behavior demonstrated by the child, directly to the director of special education of such agency or to other supervisory personnel of the agency." 20 U.S.C. § 1415(k)(5)(B). Courts have observed that the Child Find requirements do not demand that schools conduct a special education evaluation of every student who is having academic difficulties. *See, e.g.*, *D.K.*, 696 F.3d at 251; *D.G.*, 481 Fed. App'x 887.

The CCISD had no record of M.G.'s STAAR scores, grades, or hospitalization from the 2017-18 school year, only the parent's allegations that M.G. failed his classes and STAAR assessments and was hospitalized twice. Def.'s Mot. at 7 (citing AR 2223:6–10, 2545:20–25, 2556:4–2557:22, 2559:19–23). Considering M.G.'s parent's allegations as true, failing scores alone do not trigger the Child Find Obligation. *Oliver*, 2004 WL 1800878, * 4. Rather, "[f]ailing grades must be viewed in light of the evidence as a whole. *Id.* M.G. had passed all his STAAR assessments and classes the two prior years. AR 743, 1207, 1099. Prior to November 1, M.G. passed all but one of his classes. AR 761, 885–86, 919.

CCISD held a 504 meeting in September where M.G.'s parents stated that there were no issues occurring at school. AR 835, 1837:7–13. Prior to the October 30, 2018 incident, M.G. only had two disciplinary referrals–both at the beginning of October–both the school considered "typical behaviors for eight grade students." AR 1732:6–15. It is reasonable for a School District

to try intermediate measures such as section 504 plans to treat behaviors of students that are "typical" of other students their age. *Spring Branch*, 961 F.3d at 794 (citing *D.K.*, 696 F.3d at 251.

Whether the incidence occurring on October 30, 2018 was sufficient to trigger CCISD child find obligation is a question of fact to which we will defer to the SEHO's determination that it was not. AR 12. *D.G.*, 481 Fed. App'x at 893 (a court will not overturn a factual finding as clearly erroneous unless there is a definite and firm conviction that a mistake has been made).

Given the information available to CCISD prior to November 1, 2018, the Court finds that CCISD's child find obligation was not triggered until M.G.'s parents requested the FIE.

### b. The SEHO correctly concluded that CCISD's delay in providing the consent documents was reasonable.

In Texas, if a parent submits a written request to a school district for an FIE, "the district must, not later than the 15th school day after the date the district receives the request: (1) provide the parent with prior written notice of its proposal to conduct an evaluation consistent with 34 Code of Federal Regulations (CFR), § 300.503; a copy of the procedural safeguards notice required by 34 CR, § 300.504; and an *opportunity* to give written consent for the evaluation; or (2) provide the parent with the prior written notice of its refusal to conduct an evaluation consistent with 34 CFR, § 300.503, and a copy of the procedural safeguards notice required by 34 CFR, § 300.504." 19 TEX. ADMIN. CODE § 89.1011(b) (emphasis added).

Plaintiffs allege that CCISD caused the delay by declining to mail or email the consent forms even though special education documents are frequently sent to parents via email. Pls. Mot. at 12 (citing See, e.g., AF 405). The law does not require the school to *obtain* parental consent within 15 school days of the request but the *opportunity* to give consent. CCISD gave M.G.'s parents multiple opportunities to come into the school and sign the consent forms prior to the 15-day deadline. The District agreed to conduct a Full Individual Evaluation ("FIE") on November

29, 2018, thirteen school days after the parent's request. AR 893, 919. CCISD reached out to M.G.'s parent on November 29, November 30, and December 3-6 to obtain parental consent for an evaluation. AR 893, 897–98. M.G.'s parent did not come to the school and sign the consent forms until December 18, 2018. AR 915–16, 1187.

Thus, the SEHO correctly found that this was a reasonable time for the District to respond to Student's parents' request for an FIE. AR 12. The SEHO also correctly found that any delay in proceeding immediately with the FIE was due to M.G.'s parents' hesitation to sign the consent forms. AR 12.

### c.   CCISD timely conducted FIE

Once a child is identified under Child Find, a district must conduct an FIE before the initial provision of special education and related services. 20 U.S.C. § 1414(a)(1). An initial evaluation of a student under the IDEA must be conducted "within 60 days of receiving parental consent for the evaluation; or if the State establishes a timeframe within which the evaluation must be conducted, within that timeframe." 34 C.F.R. § 300.301(c)(1). In Texas, the evaluation report must be completed not later than the forty-fifth day following the date on which the local educational agency receives written consent for the evaluation from the child's parent. TEX. EDUC. CODE § 29.004(a)(1); 19 TEX. ADMIN. CODE § 89.1011(c)(1). "If a request is made for an evaluation of a child during the time period in which the child is subjected to disciplinary measures under this subsection, the evaluation shall be conducted in an expedited manner." 20 U.S.C. § 1415(k)(5)(D)(ii). Although the IDEA does not include a specific time for conducting expedited evaluations, it must be conducted in a shorter period than a typical evaluation. 71 Fed. Reg. 46,728. Failure to complete an FIE within the applicable period amounts to a denial of FAPE. *Angela B. v. Dallas Indep. Sch. Dist.*, 3:20-CV-0188-D, 2020 WL 2101228, at *2 (N.D. Tex. May 1, 2020).

M.G.'s parents demanded an expedited FIE on November 1. AF 189. Plaintiffs argue that because M.G. was subject to expulsion at the time, AF 5, CCISD was required to conduct the evaluation in an expedited manner. Pls.' Mot. at 13.

M.G.'s parents did not provide the school with a complete and correct consent form until January 4, 2019 at which time the school was out for Winter Break. AR 919, 1289. Upon the District's return to school on January 8, 2019, the campus began conducting the FIE. AR 2351:16–24. M.G. withdrew from CCISD on February 5, 2019, delaying testing due to coordination with the new school, with Plaintiffs' counsel, and with the parent's outside providers. AR 917, 1086, 1289–1293, 1335–1337, 1355; 19 Tex. Admin. Code § 89.1011(f) allows for the delays in the testing timeframe when coordination is required with a new school. The 45th school day after receiving consent for the evaluation was March 22, 2019. AR 0919. CCISD completed its evaluation on April 4, 2019, AR 1586:6–17, the 54th school day after receiving parental consent.

Even if CCISD was required to conduct the evaluation in an expedited manner, the delays in completing the FIE were reasonable under the circumstances. CCISD provided many examples of back-and-forth communications with the new school and plaintiffs' counsel to complete the FIE. *See e.g.*, AR 917, 1086, 1289–1293, 1335–1337, 1355. Thus, this Court finds that CCISD timely conducted the FIE.

### d. The SEHO correctly determined that CCISD's evaluations of M.G. were appropriate.

The IDEA requires that a student is assessed in all areas related to the suspected disability. 34 C.F.R. § 300.304(c)(4). Failure to evaluate is not a per se violation of the IDEA. *See D.G.*, 481 Fed. App'x at 889 (holding that the failure to evaluate does not violate the IDEA when student did not need special education). Additionally, as mentioned earlier, procedural defects alone do not violate the right to a free appropriate public education "unless they result in the loss of an

educational opportunity." *Adam J.*, 328 F.3d at 812. As a result, for a failure to evaluate to cause the loss of an educational opportunity, Plaintiffs must show harm stemming from the failure to evaluate. *Id.* For example, with a student who does not have dyslexia nor need dyslexia services, a school district's decision to not evaluate for dyslexia does not lead to the loss of an educational opportunity. *See Flour Bluff*, 481 Fed. App'x at 889.

Plaintiffs agree that CCISD's FIE correctly determined M.G. has a specific learning disability ("SLD") for Reading Comprehension. Pls.' Mot. at 15. However, Plaintiffs contest that the FIE was insufficient in scope and technically violated the IDEA as it failed to identify MG's SLD and needs in Reading Fluency and in Written Expression. *Id.* Plaintiffs' hired evaluator, Dr. Doan, identified M.G.'s specific problem areas in reading fluency and written expression. *Id.* Furthermore, Plaintiffs allege that the FIE was insufficient because CCISD did not conduct a proper occupational therapy ("OT") or assistive technology ("AT") assessment. Pls.' Mot. at 17.

This Court disagrees. The SEHO correctly determined that CCISD's FIE of M.G. was appropriate. This Court will address Plaintiffs claims for failure to identify a written expression and reading fluency disability and failure to conduct an OT and AT assessment in turn.

### a.   *Written Expression and Reading Fluency*

LSSP Holly Montelaro, the licensed specialist who conducted the FIE, administered a written composition assessment of FIE and concluded that M.G. did not have a written expression disability because he was able to write short, structured sentences and had basic spelling skills. AR 1273, 1384, 1964. Yet, the FIE still noted that M.G. "may demonstrate some difficulties with understanding and responding to information presented, expressing himself verbally to others, and using his reading and writing skills." AR 1270. The FIE also scored M.G. in the average range for reading fluency. AR 1272–75.

Plaintiffs allege that the FIE was insufficient in scope because it should have identified M.G.'s written expression disability. Pls.' Mot. at 15. Plaintiffs argue that CCISD had reason to believe M.G. struggled with written expression because M.G. failed the fourth and seventh grade writing portions of the STAAR assessment and multiple teacher reports indicating M.G. struggles when it comes to writing things down. *Id.*; AR 823, 843-45, 1207.

Defendant argues that Dr. Doan's test. is less reliable than CCISD's because Dr. Doan did not use the cross-battery approach to verify the accuracy of low scores. Def.'s Mot. at 13–14. AR 2388:6–24. The cross-battery approach, used in the FIE, "provides guidelines so that assessments can use multiple tests to measure a broader range of abilities or investigate more specific abilities than might be available on only one battery." AR 1264.

Plaintiffs also argue that the FIE was insufficient in scope because it should have identified M.G.'s reading fluency disability. Pls.' Mot. at 16. Plaintiffs argue that CCISD had reason to believe M.G. struggled with reading fluency because M.G.'s fifth grade reading scores were equivalent to that of a second and third grader. *Id.*; AR 769, 785. Plaintiffs also complain that the FIE did not report M.G.'s actual fluency rate, just that he scored in the average range. Pls.' Mot. at 16. Dr. Doan found that M.G. had a reading fluency disability because her test put M.G.'s current reading fluency at an upper-third and fourth grade level. AR 1141–42, 1161. CCISD argues that Dr. Doan's testing method, a silent reading test, is not reflective of what goes on in the classroom. Def.'s Mot. at 14.

A district court should not substitute its "own notions of sound educational policy for those of the school authorities which [it] review[s]." *Rowley*, 458 U.S. at 206. As such, this Court will not stand in judgment of one approach over the other. This Court finds the written expression and reading fluency evaluations of M.G. to be adequate.

### b.   OT and AT Assessment

These issues were not raised during the Special Education Officer Due Process Hearing. Therefore, Plaintiffs have not exhausted their remedies for these claims. Plaintiffs must satisfy the IDEA's exhaustion requirements against state and local education agencies before bringing a claim based on the IDEA in court. *Wood v. Katy Indep. Sch. Dist.*, No. 4:09-CV-1390, 2012 WL 4018181, *4 (W.D. Tex. Sept. 12, 2012); *Heather H. et al., v. Northwest Indep. Sch. Dist.*, No. 4:19-CV-00823-RWS-CAN, 2021 WL 1523007, *11 n.7 (E.D. Tex. Feb. 25, 2021). Because these claims are not properly before this Court, the Court will not consider them now.

### ii.   CCISD's failure to determine M.G.'s eligibility did not deny M.G. a FAPE.

School districts have a duty to evaluate a child for any "suspected disability." 20 U.S.C. § 1414(b)(3)(B). However, it is the Admission, Review, and Dismissal ("ARD") Committee that ultimately determines whether that "suspected disability" falls within a statutorily defined "qualifying disability." *Heather H. v. Northwest Indep. Sch. Dist.*, No. 4:19-CV-00823-RWS, 2021 WL 1152837, * 4 (E.D. Tex. Mar. 26, 2021) *appeal docketed*, No. 21-40316 (5th Cir. Apr. 20, 2021) (citing 34 C.F.R. § 300.306; 19 Tex. Admin. Code § 89.1050). Before a child can be eligible for an IEP, he or she must first be evaluated by the local educational agency and then identified as eligible for special education services as a child with a disability by his or her ARD committee. *Id.*; *See* 20 U.S.C. § 1414(d)(1)(A). The child's ADR committee must then determine whether the child (1) has a qualifying disability, and (2) by reason thereof, needs special education and related services. *Lisa M. v. Leander Indep. Sch. Dist.*, 924 F.3d 205, 215 (5th Cir. 2019) (citing 20 U.S.C. § 1401(3)(A)). That a child has a 504-accommodation plan, does not change the analysis. *Id.* at 218.

Plaintiffs argue that CCISD violated the IDEA due process requirements because it did not identify M.G. as eligible for special education prior to or during the prior underlying proceedings. Pls.' Mot. at 18–19. Plaintiffs further argue that the SEHO impermissibly delegated his responsibility to the ARD committee to make an eligibility determination though Plaintiffs raised the issue. Pls.' Mot. at 19. However, as Defendant points out, at the time of the hearing, the SEHO lacked jurisdiction to order M.G.'s eligibility under the IDEA because M.G.'s ARD Committee had not reviewed CCISD's FIE. Def.'s Mot. at 14 (citing *T.B. v. Bryan Indep. Sch. Dist.*, 628 F.3d 240, 242–43 (5th Cir. 2010)). Any effort to determine eligibility prior to an ARD Committee meeting can constituted improper predetermination, depriving the parents of a meaningful opportunity to fully participate as equal members of the IEP team." *E.R. by E.R. v. Spring Branch Indep. Sch. Dist.*, 909 F.3d 754, 769 (5th Cir. 2018). Plaintiffs complain that CCISD did not identify M.G. as eligible for special education prior to the due process proceedings, but Plaintiffs filed a request for the Special Education Due Process Hearing on December 4, 2018 before the FIE was completed. AR 22–38. And it was Plaintiffs who prevented the ADR committee from meeting before the due process hearing. AR 1564:16–1565:2; 1588:6–18. As Defendant points out, Plaintiff's counsel stated: "I don't believe that an ARD meeting to consider the evaluations is even relevant in this proceeding, because it's not an issue necessarily that's been raised in our complaint. So I don't believe the hearing officer even has subject matter jurisdiction over that issue at this time." Def.'s Mot. at 14–15; AR 1481:20–25.

CCISD completed the FIE on April 4, 2019. AR 1251. Plaintiffs argue that CCISD unreasonably delayed in holding an initial eligibility meeting, though that meeting was held on April 8, 2019. Pls.' Mot. at 19; AR 1435–38. This Court agrees with the SEHO that a four-day timeframe is not an unreasonable delay.

23

Plaintiffs also argue that the SEHO denied M.G. FAPE in finding that the FIE determined M.G. "would likely meet criteria as a student with Other Health Impairment (OHI) for ADHD upon a physician's completion of the appropriate paperwork," AR 0009, because M.G.'s parents had to pay for the ADHD diagnosis and testing. Pls.' Mot. at 19 (citing *M.J.C. v. Special Sch. Dist.*, No. Civ. 10-4861 JRTTNL, 2012 WL 1538339, at *7–8 (D. Minn. 2012)). Plaintiffs seem to be referring to the ADHD diagnosis from January 2017. *M.J.C. v. Special Sch. Dist.* found that the District's failure to fully evaluate the child resulted in a denial of FAPE because, in waiting for the parent to produce a medical diagnosis, the district unreasonably delayed. Here, the ADHD diagnosis was already voluntarily completed at the expense of the parents, and the parents have submitted its information to the school. AR 806. Thus, in using this diagnosis, CCISD has not caused an unreasonably delay in diagnosing. As for the cost of the ADHD testing, parents' have a right evaluation at the public expense is only once the Child Find Obligations have been triggered. *See* 34 C.F.R. § 300.502. M.G.'s parents obtained the ADHD diagnosis long before CCISD's Child Find Obligation was triggered.

Plaintiffs likewise assert that the SEHO factually erred in finding that the "FIE determined Student met eligibility criteria" for an SLD in Reading Comprehension, AR 0009, because the FIE did not determine M.G.'s educational need and thus, feel short of establishing IDEA-eligibility. Pls.' Mot. at 20. M.G.'s FIE indicated a potential qualifying eligibility in SLD for Reading Comprehension and Other Health Impairment for ADHD. AR 1278. As previously stated, it is the duty of the ADR committed to determine whether a student needs special education and related services. Any delay in the ADR committee meeting to whether M.G. had a qualifying disability and required special education was due to the actions of the Plaintiffs, not CCISD.

iii.     *Plaintiffs caused the delay in setting up an ADR committee.*

Plaintiffs allege that the SEHO erred in finding that CCISD "did not have an obligation to provide Student a FAPE at any time prior to the hearing." Pls.' Mot. at 20; AR 12. Plaintiff points out, and this Court agrees, that CCISD was required to ensure that M.G. received a FAPE within a reasonable time after it had notice of behavior likely to indicate a disability. *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 53 (2005); *Richard R.*, 567 F. Supp. 2d at 950. This Court has already found that CCISD did not unreasonably delay evaluating M.G. and holding an initial meeting to discuss M.G.'s eligibility. Thus, this Court finds that CCISD's did not deny M.G. an IEP. Rather, as previously mentioned, it was M.G.'s parents who decided that the ADR committee meeting was not necessary. AR 1481:20–25. Furthermore, Plaintiffs have failed to show that M.G. suffered loss of any educational opportunity due to the denial of an ADR meeting, *Adam J.*, 328 F.3d at 812, only allege as much, Pls.' Mot. at 21.

iv.     *Plaintiff did not show that they are entitled to reimbursement for Oak Creek Academy.*

Relief can only be provided from the date on which the District was required to provide Student a FAPE. *Dallas Indep. Sch. Dist. v. Woody*, 865 F.3d 303, 320–21 (5th Cir. 2017). Because this Court has found that CCISD did not violate the IDEA or deny M.G. a FAPE, Plaintiffs are not entitled to recover damages.

v.     **Conclusion**

Plaintiffs fail to establish that M.G. was denied a FAPE. CCISD met its Child Find Obligation under the IDEA. The failure to determine M.G.'s eligibility and hold an ADR committee meeting was not due to CCISD's failure to act, but the Plaintiffs' refusal to comply with and attend the ARD committee. Since M.G. was not denied a FAPE, Plaintiffs are not entitled to reimbursement for Oak Creek Academy.

## C.  SUMMARY JUDGMENT

Plaintiffs asks for judgment of IDEA Claims on the Administrative Record and for Partial Summary Judgment of Section 504 / ADA Claims alleging CCISD discriminated against M.G. Pls.' Mot. at 25. CCISD asserts that it is entitled to Summary Judgment on Plaintiffs' ADA and section 504 claims under issue preclusion or, alternatively, because the claims fail on the merits. Def.'s Mot. at 17–18. This Court agrees with Defendant that CCISD is entitled to Summary Judgment on Plaintiffs' ADA and 504 Claims under issue preclusion and on the merits.

### i.    *Issue Preclusion*

Issue preclusions applies when the legal standards for the IDEA and the ADA and § 504 claims are not "significantly different." *Pace v. Bogalusa*, 403 F.3d 272, 290 (5th Cir. 2005). "Issue preclusion or collateral estoppel is appropriate when: (1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision." *Id.* (citing *Southmark Corp. v. Coopers & Lybrand*, 163 F.3d 925, 932 (5th Cir. 1999). To establish a claim for denial of FAPE under ADA and § 504, Plaintiffs must, at a minimum, allege a denial of FAPE under the IDEA. *D.A.*, 629 F.3d at 454. Resolving IDEA claims in a favor of the school district precludes a plaintiff's redundant claims under the ADA and § 504 when those claims are based on the district's alleged IDEA violations. *M.V. b/n/f/ J.C. v. Conroe Indep. Sch. Dist.*, No. H-18-401, 2018 WL 4564948, *7 (S.D. Tex. Sept. 24, 2018).

Plaintiffs claim that CCISD discriminated against M.G. by failing to timely evaluate M.G. under the IDEA, failing to provide an IEP for M.G., using physical restraints on M.G. during the October 30, 2018 incident, and excluding M.G. from school and attempting to place him in disciplinary alternative education placement. Pls.' Mot. at 23–25. Plaintiffs' complaints that CCISD failed to timely evaluate M.G. and provide him with an IEP are based on their claims for

IDEA violations. Plaintiffs also asserts that the restraints and expulsion denied M.G. a FAPE under the IDEA and § 504. Pls.' Mot. at 23–24. The parties have necessarily and adequately litigated Plaintiffs' IDEA claims, *Pace*, 403 F.3d at 290, and the Court found that CCISD had not denied M.G. a FAPE under IDEA. Thus, to the extent Plaintiffs' claims under the ADA and § 504 are based on CCISD's alleged IDEA violations, those claims are subject to issue preclusion.

### ii.        *On the Merits*

Intentional discrimination may be a basis for ADA and § 504 claims when those claims do not depend on facts that establish or support an IDEA breach. *M.V.*, 2018 WL 4564948, at *7–8 (giving an example of peer-on-peer harassment because of the child's disabilities or an allegation that the child qualified for a service under the ADA or § 504 that the child did not qualify for under the IDEA). Plaintiffs only factual allegations that do not pertain to an IDEA violation are Plaintiffs' allegations that they are entitled relief under their ADA and § 504 claims because CCISD failed to allow M.G.'s to use his § 504 accommodations, including his "cool-off" period on October 30, 2018. Pls.' Mot. at 23.

To establish a violation of the ADA, Plaintiffs must prove that (1) the child is a qualified individual under the ADA; (2) that child was "excluded from participation in, or denied benefits of, services, programs, or activities for which the public entity is responsible, or otherwise being discriminated against by the public entity;" and (3) "such exclusion, denial of benefits, or discrimination [was] by reason of his disability." *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004); *I.A. v. Seguin Indep. Sch. Dist.*, 881 F. Supp. 2d 770, 776 (W.D. Tex. 2012). To recover damages, plaintiffs must prove that the discrimination was intentional and "solely by reason of" the child's disability. *D.A.*, 629 F.3d at 435; *Delano-Pyle*, 302 F.3d at 574. That an educational authority mistakenly exercised professional judgment is not enough. *D.A.*, 629

F.3d at 454. The actions must "depart grossly from accepted standards among educational professionals." *Id.* at 455.

Defendants assert that Plaintiffs cannot establish intentional discrimination because the responding CCISD officers did know about M.G.'s section 504 plan at the time. Def.'s Mot. at 20. This Court agrees. Plaintiffs failed to show that CCISD intentionally disregarded M.G.'s § 504 plan. As such, Plaintiffs claims under the ADA and § 504 fail as a matter of law.

## IV. CONCLUSION

It is therefore **ORDERED** that Defendant's Motion for Judgment on the Administrative Record and Summary Judgment is **GRANTED** and the Plaintiff's Motion for Judgment on the Administrative Record and Partial Summary Judgment is **DENIED**.

**SIGNED** this 7th day of May, 2021.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE